1277

Sandra Jean PREVATTE, Respondent v. Harry PREVATTE, Appellant.
(377 S. E. (2d) 114)

Court of Appeals

*Ronald M. Childress* of *Childress & Mille,* Columbia, *for appellant.*

*Mary E. Buchan* of *Whittington & Buchan,* Mullins, *for respondent.*

Heard Dec. 7, 1988.

Decided Jan. 23, 1989.

SANDERS, Chief Judge:

This is an appeal from an order of the Family Court reaffirming a prior order of the Court. The prior order concluded that a common law marriage existed between appellant Harry Prevatte and respondent Sandra Jean Prevatte, granted Mrs. Prevatte a divorce on the ground of adultery, and awarded her certain ancillary relief including alimony, an equitable division of marital property and attorney fees. During the proceedings which led to the prior order, Mr. Prevatte attempted to attack the validity of a certain divorce decree purporting to end a previous marriage of Mrs. Prevatte. He alleged that the Court which issued that decree was without jurisdiction. The Family Court ruled that Mr. Prevatte did not have standing to attack the decree. He appealed. We reversed and remanded, holding "a stranger may collaterally attack a decree of divorce for want of jurisdiction in the court entering it, where his property rights are injuriously affected thereby." *See Ex parte Nimmer,* 212 S. C. 311, 319, 47 S. E. (2d) 716, 719 (1948). Our opinion was filed as *Prevatte v. Prevatte,* Memorandum

Opinion No. 87-MO-08 (S. C. Ct. App. filed Jan. 28, 1987). On remand, the Family Court considered the attack by Mr. Prevatte on the validity of the decree, rejected the attack and reaffirmed the prior order. He again appeals. We affirm.

Our standard of review in this case is routine. We have jurisdiction to find facts based on our own view of the evidence, but we are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to evaluate their testimony. *Ray v. Ray*, 296 S. C. 350, 372 S. E. (2d) 910 (Ct. App. 1988). We find essentially the same facts as those found by the trial judge.

Broadly stated, the issues presented on appeal are whether the trial judge erred: (1) in concluding that a common law marriage existed between Mr. and Mrs. Prevatte; (2) in granting Mrs. Prevatte a divorce on the ground of adultery; and (3) in awarding Mrs. Prevatte alimony, an equitable division of marital property and attorney fees.

I

We first address the issue of whether the trial judge erred in concluding that Mr. and Mrs. Prevatte were married to each other.

In September 1959, Mr. and Mrs. Prevatte purported to marry by participating in a marriage ceremony. Mrs. Prevatte, was, at the time, already married to one Allard Owens. Both Mr. and Mrs. Prevatte were aware of this fact.

Mr. and Mrs. Prevatte lived together as husband and wife for more than twenty-five years. A child, whom they raised to adulthood, was born to them.

In January 1977, Mr. Owens obtained a divorce decree purporting to end his marriage to Mrs. Prevatte. He had served her by publication as ordered by the Clerk of Court for Florence County. Neither Mr. Prevatte nor Mrs. Prevatte became aware of the decree until some time in 1985.

Except for brief periods in 1982 and 1983, Mr. and Mrs. Prevatte continued to live together as if they were married until they permanently separated in October 1984. They held themselves out as husband and wife, filed joint tax returns, and Mr. Prevatte carried insurance on Mrs. Prevatte listing her as his wife.

In April 1985, Mrs. Prevatte petitioned the Court for a divorce from Mr. Prevatte. Previous actions had been filed in 1983 and 1984. In the 1984 action, Mr. Prevatte answered and admitted the marriage to Mrs. Prevatte.

The appealed order upheld the validity of the decree ending the marriage of Mr. Owens and Mrs. Prevatte, and reaffirmed the prior order which had concluded that a common-law marriage thereafter arose between Mr. and Mrs. Prevatte.

### A

Mr. Prevatte attacks the validity of the divorce decree obtained by Mr. Owens, arguing that the Court which issued the decree had no jurisdiction over Mrs. Prevatte.

"A judgment may be collaterally attacked if the court lacked jurisdiction and the lack of jurisdiction appears on the face of the record." *Yarbrough v. Collins,* 293 S. C. 290, 292, 360 S. E. (2d) 300, 301 (1987). Mr. Prevatte does not point to any jurisdictional defect apparent on the face of the record. Instead, he appears to argue that the Court lacked jurisdiction over Mrs. Prevatte because Mr. Owens undertook to serve her by publication without first making a duly diligent effort to find her. *See* Section 20-3-70, Code of Laws of South Carolina, 1976 (in a divorce action, service by publication is authorized only when the person to be served "cannot, after due diligence, be found within the State."). In the absence of fraud or collusion, the decision of the officer issuing an order of publication is final. *Yarbrough,* 293 S. C. 290, 360 S. E. (2d) 300. Mr. Prevatte does not contend that Mr. Owens obtained the order by fraud or collusion. Therefore, his attack on the validity of the divorce decree must fail.

### B

Mr. Prevatte further argues that, even if the divorce decree obtained by Mr. Owens was valid, his relationship with Mrs. Prevatte was not thereafter converted into a common-law marriage.

"The presumption that an illicit relationship continues to be unlawful as long as the parties live together is generally

held to be overcome, in states recognizing common-law marriages, by evidence that the parties could not originally marry because of a legal impediment affecting one or both of them, and that during their cohabitation such impediment was removed." 52 Am. Jur. (2d) *Marriage* § 139 (1970).

In South Carolina, however, "[a] relationship illicit at its inception does not ripen into a common law marriage once the impediment to marriage is removed. Instead, the law [in this State] presumes that the relationship retains its illicit character after removal of the impediment. In order for a common-law marriage to arise, the parties must agree to enter into a common law marriage after the impediment is removed, though such agreement may be gathered from the conduct of the parties." *Yarbrough v. Yarbrough*, 280 S. C. 546, 551, 314 S. E. (2d) 16, 19 (Ct. App. 1984) (citations omitted). South Carolina has not been alone in following this presumption. *E.g., United States Fidelity & Guar. Co. v. Britton*, 106 App. D. C. 58, 269 F. (2d) 249 (1959) (stating District of Columbia law); *Pierce v. Pierce*, 355 Pa. 175, 49 A. (2d) 346 (1946); *Appeal of Reading Fire Ins. & Trust Co.*, 113 Pa. 204, 6 A. 60 (1886); *Williams v. Williams*, 46 Wis. 464, 1 N. W. 98 (1879); *Howard v. Howard*, 459 S. W. (2d) 901 (Tex. Civ. App. 1970).

There appears to be a split of authority among the states requiring an agreement after removal of the impediment as to whether the parties must have knowledge that the impediment has been removed. Some of the earlier cases required knowledge of the removal of the impediment. The courts, in many of these cases, reasoned that unless the parties had such knowledge, there could be no agreement following the removal of the impediment. *E.g. Cartwright v. McGown*, 121 Ill. 388, 12 N. E. 737 (1887); *Rice v. Randlett*, 141 Mass. 385, 6 N. E. 238 (1886); *Compton v. Benham*, 44 Ind. App. 51, 85 N. E. 365 (1908). Other courts have expressly rejected knowledge that the impediment has been removed as a criterion in deciding such cases. *E.g. Hess v. Pettigrew*, 261 Mich. 618, 247 N. W. 90 (1933); *In re Wells*, 123 App. Div. 79, 108 N. Y. S. 164 (1908), aff'd, 194 N. Y. 548, 87 N. E. 1129 (1909). We need not decide here which of these views to adopt.

Mr. and Mrs. Prevatte knew of the impediment to their marriage at the time they first began living together as

husband and wife. Thus, they recognized, from the outset, the illicit nature of their relationship. It is clear, however, that at least by 1984, they had come to the conclusion that they were married. After all, they both represented to the Court that they were married at that time. Mr. Prevatte made this representation when it was contrary to his best interest. It follows, therefore, that at least by 1984, they had somehow come to the conclusion that the impediment to their marriage no longer existed. In fact, the impediment had been removed. Finally, it is clear from their conduct that they thereafter gave every indication of their agreement to be married. The fact that they did not know exactly when the impediment to their marriage had been removed or even how it had been removed is of no consequence, under the circumstances.

## II

We next address the issue of whether the trial judge erred in granting Mrs. Prevatte a divorce on the ground of adultery. Mr. Prevatte argues that "the evidence [on this issue] was circumstantial and inconclusive."

The evidence is, in fact, extraordinarily ordinary (or, perhaps more accurately stated, uncommonly common).[1] Mrs. Prevatte became suspicious that Mr. Prevatte was carrying on an illicit relationship with another woman. The adult child of the parties testified that he saw Mr. Prevatte and the woman parked at night in a graveyard. Mr. Prevatte was sitting in the front seat on the left side. The woman was sitting in the middle of the front seat. Another witness testified that he saw Mr. Prevatte and the woman get in a car together on another night and drive down a dead-end dirt road. They returned an hour and a half later, and the woman dropped off Mr. Prevatte at his own car. Mrs. Prevatte testified that, when she questioned Mr. Prevatte as to his whereabouts, he responded, "If I tell you the truth I know you won't ever stay with me again." The testimony of the two witnesses and Mrs. Prevatte was uncontradicted.

---

[1] Oscar Wilde said, "In love, one always begins by deceiving oneself and ends by deceiving others; that is what the world calls a romance." Of course, we do not necessarily agree.

Because "adultery, by its very nature, is an activity which takes place in private, it may be proved by circumstantial evidence." *McLaurin v. McLaurin*, 294 S. C. 132, 133, 363 S. E. (2d) 110, 111 (Ct. App. 1987). Indeed, if it were not for circumstantial evidence, the practice of adultery would scarcely be known to exist. A finding of adultery is allowed where there is evidence of both the opportunity to commit adultery and the disposition to commit adultery. *Hartley v. Hartley*, 292 S. C. 245, 355 S. E. (2d) 869 (Ct. App. 1987). State of mind can be inferred from circumstances. For example, it can be inferred that a piano player in a bawdyhouse knows what is going on upstairs. The same evidence which proves the opportunity can also prove the disposition. For example, where a married man is observed going upstairs in a bawdyhouse, unless something to the contrary appears, no other evidence is required to warrant a finding of adultery.

The opportunities available to Mr. Prevatte are apparent. His disposition can be inferred from the circumstances in which he was observed, coupled with his response when questioned regarding his whereabouts. When two people, a man and a woman, park by themselves at night in lonely places and purposely sit very close together, unless some other reason appears for their behavior, even the most dispassionate observer may very well infer that they are romantically disposed toward each other. Such is life.

Moreover, insufficiency of proof "should not be allowed to defeat a divorce where the court is fully convinced adultery has been committed and a party has had full opportunity to defend or refute the charge." *McLaurin*, 294 S. C. at 134, 363 S. E. (2d) at 111. Our Supreme Court, in at least one case, has affirmed a finding of adultery where there was no evidence of the disposition to commit adultery. *See Anders v. Anders*, 285 S. C. 512, 331 S. E. (2d) 340 (1985) (dissenting opinion: the only evidence of adultery was the fact that the appellant was seen on several occasions in nightclubs and once in the apartment of another person when others may have been present).[2]

---

[2] *Cf. Loftis v. Loftis*, 284 S. C. 216, 218, 325 S. E. (2d) 73, 74 (Ct. App. 1985) (the finding of adultery was affirmed where the only evidence of the

The trial judge, not having been born yesterday, was fully convinced that Mr. Prevatte had committed adultery. So are we.

### III

We finally address the issues of whether the trial judge erred in awarding Mrs. Prevatte alimony, an equitable division of marital property and attorney fees.

### A

Mr. Prevatte argues that the trial judge "erred in awarding alimony to [Mrs. Prevatte] when there was no evidence of need therefor."

The record in the first appeal of this case reveals that Mr. Prevatte excepted to the alimony award on one ground only: "there was never any valid marriage between the appellant and the respondent." In the proceedings which led to the prior order, the Family Court considered need as one of the factors relevant to an award of support. The Court specifically found that Mrs. Prevatte, "due to her health, is unemployable." Mr. Prevatte took no exception to any finding on the issue of need. Thus, these findings became the "law of the case." *See Walters v. Canal Ins. Co.*, 294 S. C. 150, 151, 363 S. E. (2d) 120, 121 (Ct. App. 1987) ("Where no exception is taken to findings of fact or conclusions of law, they become the 'law of the case.'").

In any event, the evidence supports the award of alimony by the trial judge.

### B

Mr. Prevatte argues that the trial judge erred in awarding Mrs. Prevatte a forty percent interest in certain real property acquired during the marriage in that she "enjoyed no special equity and made no material contribution to its acquisition."

Mrs. Prevatte was employed prior to suffering health problems which resulted in her being hospitalized. When she was released from the hospital, Mr. Prevatte told her he

---

disposition to commit adultery was a statement by the appellant that he and a woman "were living together just like they were married.").

would rather she not work. She thereafter made substantial contributions as a homemaker. Her homemaking activities consisted of cooking, cleaning, washing, caring for the child of the parties and extended even to keeping a garden for the benefit of the family and caring for the ailing mother of Mr. Prevatte in their own home.

The equitable division was made prior to the adoption of the Equitable Apportionment of Marital Property Act.[3] At that time, the law of this state provided:

> [W]here, as here, one spouse has forgone career opportunities at the behest of the primary wage-earning spouse, and throughout a long marriage has remained in the home to rear children and provide a suitable environment for the family, the homemaker spouse shall have upon divorce an equitable interest in real property acquired by the wage-earner spouse during the marriage.

*Parrott v. Parrott*, 278 S. C. 60, 63, 292 S. E. (2d) 182, 183 (1982). "The trial court has wide discretion in determining equitable distribution of marital property and its judgment will not be disturbed on appeal absent a showing of abuse of discretion." *Martin v. Martin*, 296 S. C. 436, 373 S. E. (2d) 706, 709 (Ct. App. 1988). We find no abuse of discretion.

### C

Mr. Prevatte argues the trial judge erred in "affirming its award to [Mrs. Prevatte] of attorney fees when the underlying judgment had been reversed." He points out that one of the factors to be considered in awarding attorney fees is "the beneficial results accomplished." *See Henry v. Henry*, 296 S. C. 285, 372 S. E. (2d) 104 (Ct. App. 1988).

When we reversed the prior order because of the ruling on the issue of standing, we specifically expressed "no opinion as to the other issues raised by Mr. Prevatte on appeal." On remand, the Family Court reaffirmed the results reached by the prior order on all issues. The attorneys for Mrs. Prevatte

---

[3] Codified as Sections 20-7-471 through 20-7-479, Code of Laws of South Carolina, 1976, as amended.

have obviously accomplished beneficial results for her. The fact that their efforts were temporarily derailed should not defeat her claim for attorney fees, now that the results have been obtained. Mr. Prevatte does not challenge the award of attorney fees on any other basis.

For these reasons, the order of the Family Court is

Affirmed.

GARDNER and GOOLSBY, JJ., concur.

