1853

Antoinette JOHNS, Appellant v. James D. JOHNS, Respondent.

(420 S.E. (2d) 856)

Court of Appeals

*John W. Harte*, Aiken, *for appellant.*

*Thomas W. Weeks*, Barnwell, *for respondent.*

Heard May 12, 1992.

Decided July 13, 1992.

CURETON, Judge:

This is an appeal from an order of the family court wherein Antoinette Johns, appellant, contended that the parties were married by operation of common law. The appellant sought a divorce, custody of the parties' child, an increase in child support, alimony, and attorney fees. James D. Johns, the respondent, counterclaimed and denied the common-law marriage, sought custody and the right to claim the child for tax purposes, and requested the appellant to replace certain savings bonds the respondent bought for the benefit of the child and were cashed by the appellant. In its order the trial court held there was no common law marriage, granted custody to the appellant, awarded visitation to the respondent, increased

child support, permitted the respondent to claim the child for tax purposes, required the appellant to replace the savings bonds cashed by her, and awarded $650.00 to the appellant as attorney fees. The appellant appeals all issues. We affirm as modified.

Appellant and respondent began residing together while respondent was married to a third party. In August 1983, prior to their cohabitation, the parties consulted an attorney. The attorney informed them the respondent would not be eligible to divorce his wife on the ground of one year separation for a certain number of days. The parties began living together shortly thereafter. One child was born to them in October 1984.

The parties remained together, living as husband and wife, until they separated in September 1986. The respondent began living with another woman in November 1987. The respondent obtained a divorce from his wife in 1988. In October 1989, the parties signed a consent order in which the court found they were married at common law and ordered that they were "legally separated."

The issues presented on appeal are whether the trial judge erred in (1) finding there was no common-law marriage; (2) failing to award costs to the appellant; (3) awarding only $650.00 in attorney fees to the appellant; (4) granting respondent two-week periods of visitation in June, July, and August; and (5) requiring the appellant to replace $2,000.00 in savings bonds.

At the time the parties began residing together in September 1983, and throughout their cohabitation, the respondent was legally married to another woman. Thus, any marriage between the parties while respondent had a subsisting marriage was void as a matter of public policy. S.C. Code Ann. § 20-1-80 (1985) ("All marriages contracted while either of the parties has a former wife or husband living shall be void"). It was void from its inception, not merely voidable, and, therefore, cannot be ratified or confirmed and thereby made valid. *Day v. Day*, 216 S.C. 334, 58 S.E. (2d) 83 (1950); 52 Am. Jur. (2d) *Marriage* § 67 (1970).

> In South Carolina, . . . [a] relationship illicit at its inception does not ripen into a common law marriage once the impediment to marriage is removed. Instead, the law [in this

State] presumes that the relationship retains its illicit character after removal of the impediment. In order for a common law marriage to arise, the parties must agree to enter into a common law marriage *after* the impediment is removed, though such agreement may be gathered from the conduct of the parties. (Emphasis added.)

*Prevatte v. Prevatte*, 297 S.C. 345, 349, 377 S.E. (2d) 114, 117 (Ct. App. 1989) (quoting *Yarbrough v. Yarbrough*, 280 S.C. 546, 551, 314 S.E. (2d) 16, 19 (Ct. App. 1984)).

Here, the respondent did not divorce his wife until after his separation from the appellant. Although the impediment was removed, the parties did not thereafter agree to enter into a common law marriage. In retrospect, their separation ended the relationship. Therefore, no common-law marriage ever existed between the parties.

On appeal, the appellant argues the issue of the existence of a common law marriage is *res judicata* based on the earlier consent order signed by the parties. We disagree.

Appellant testified regarding her knowledge of respondent's marital status as follows:

Q. Okay. And please, if you would look on page four, line six. The question: "All right. So you know [sic] that he was still married when you went to that attorney in Sumter?" Your answer: "Uh-huh. Yes."
A. That's what I just said.
Q. Right.
A. I know [sic] the day I went to the lawyer that he was married.
Q. And that was before you started living with him?
A. Yes.
Q. And you are telling the Court now that you didn't know that he continued to be married to someone else?
A. That's—Yes, sir.

On the other hand, the respondent testified the appellant knew he was married the entire time they were living together. He also stated the appellant knew they were never legally married when they signed the consent order.

The common-law marriage was "void" as a matter of public policy. S.C. Code Ann. § 20-1-80 (1985). The fact the appellant

claims to have subjectively acted in "good faith" does not change the rule that the bigamous marriage was void. *Toler v. Oakwood Smokeless Coal Corp.*, 173 Va. 425, 4 S.E. (2d) 364 (1939); 52 Am. Jur. (2d) *Marriages* § 71 (1970). Jurisdictions following these rules, such as South Carolina, will not recognize such marriages irrespective of "good faith" of one party because to do so would violate their public policy. *Id.*

Although *res judicata* is based on sound public policy, it is not to be applied rigidly so as to defeat the ends of justice. *Beverly Beach Properties, Inc. v. Nelson*, 68 So. (2d) 604 (Fla. 1953); 46 Am. Jur. (2d) *Judgments* § 402 (1969). Thus, application of *res judicata* will not be applied where it will contravene other important public policies; the courts must weigh the competing public policies. *Id.* The public policy underlying *res judicata* may have to yield to other public policies, even in consent orders. 47 Am. Jur. (2d) *Judgments* § 1090 (1969). Here, the public policy expressed in S.C. Code Ann. § 20-1-80 (1985) overrides the public policy of *res judicata*. Although the parties' consent order is not void, the marriage it affirms is void. In balancing the relevant public policies (i.e. the public policy of finality of judgments versus the public policy of not recognizing bigamous marriages) the consent order should not be given *res judicata* effect. Accordingly, we affirm the ruling of the court that *res judicata* does not bar this action. *Cf. Jennings v. Dargan*, 417 S.E. (2d) 646 (S.C. Ct. App. 1992) (where two policies conflict, the court will give deference to the overriding policy).

Appellant further contends defendant is estopped from asserting a former marriage as a defense because he consented to the earlier order of the family court and did not appeal it. We disagree.

The burden of proof is on the party who asserts estoppel. *Frady v. Smith*, 247 S.C. 353, 147 S.E. (2d) 412 (1966). The elements of estoppel as to the party estopped are (1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts. As to the party claiming the estoppel, the elements are (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; and (2) reliance upon

the conduct of the party estopped. *Southern Dev. Land & Golf, Co., Ltd. v. South Carolina Pub. Serv. Auth.,* — S.C. —, 409 S.E. (2d) 428 (Ct. App. 1991). The elements of estoppel have not been proven by the appellant. She cannot now assert that she relied upon the respondent to terminate his prior marriage when it is clear from the record both parties entered into this relationship with the knowledge the respondent was already married to a third party. Appellant states she made no further inquiries of respondent about his pending divorce and respondent apparently made no attempt to finalize his divorce until after the parties separated. Estoppel cannot exist where the knowledge of both parties is equal, and nothing is done by the one to mislead the other." *Helsel v. City of North Myrtle Beach,* — S.C. —, —, 413 S.E. (2d) 821, 824 (1992) (citing *Chaffee v. City of Aiken,* 57 S.C. 507, 513, 35 S.E. 800, 802 (1990)). Also, estoppel will not apply where, as here, the appellant had the "means of knowledge" of the respondent's true marital status. *Frady,* 247 S.C. 353, 147 S.E. (2d) 412.

On appeal, the appellant also argues the trial court erred in not awarding her costs and only awarding her $650.00 in attorney fees.

The appellant has a degree in criminal justice and at one time owned her own detective agency. She is presently unemployed and has only worked temporary jobs since the birth of her child. Due to injuries sustained in a motorcycle accident, she developed osteoporosis in the ankles and legs which limits her ability to stand, walk, or sit for long periods of time. Her handicap has made it difficult for her to obtain permanent employment, but she states she is looking for work all the time. The appellant lives in government subsidized housing paying $9.00 per month rent. She receives $102.00 monthly in food stamps and $100.00 per week in child support.

From the onset of these proceedings the respondent vigorously contested the appellant's right to custody of the parties' child. In also pursuing her claim for custody, appellant incurred substantial costs. She incurred costs for detective services in the amount of $860.00 and costs for a psychological evaluation of the child.[1] Her attorney fees totaled $4,200.00.

On appeal from the family court, the Court of Appeals may

---

[1] The cost of the psychological evaluation is not in the record.

find facts according to its own view of the preponderance of the evidence. *Winchell v. Winchell*, 291 S.C. 321, 353 S.E. (2d) 309 (Ct. App. 1987). It is clear from the record the fees were incurred in large part to defend against a claim for custody by the respondent. That claim was presented with sufficient vigor to require the appointment of a guardian ad litem,[2] a full investigation by the guardian, pendente lite court action, and a psychologist's examination of the minor child. It is also apparent the appellant has limited resources to bear the costs of this litigation. We, therefore, modify the trial court's award and award the appellant $2,000.00 in attorney fees and costs.

In addition, appellant claims the trial court's award to respondent of two weeks visitation with the child in June, July and August is excessive. We disagree.

The amount of visitation awarded is a matter left to the trial judge's discretion. *Courie v. Courie*, 288 S.C. 163, 341 S.E. (2d) 646 (Ct. App. 1986); *Lassiter v. Lassiter*, 289 S.C. 341, 345 S.E. (2d) 504 (Ct. App. 1986). Visitation which is "tantamount to divided custody" is to be avoided. *Courie*, 288 S.C. at 167, 341 S.E. (2d) at 649.

The trial judge awarded visitation as follows: every other weekend, from 6:00 p.m. Friday until 6:00 p.m. Sunday; the first two weeks of June, July, and August; alternate Thanksgiving and spring break holidays; and one week at Christmas. This award of visitation is well below the amount rejected in *Lassiter* where the amount of visitation amounted to nearly 150 days per year with a weekday (Wednesday) visitation every week. Respondent's visitation is also well below that rejected in *Courie* which was 165 days per year. Also, the visitation here results in much less shuttling of the child between parents than in *Lassiter*. Moreover, the record does not reflect the amount of visitation will have a detrimental effect on the child. We find no abuse in the trial court's award of visitation.

All other issues raised by appellant are manifestly without merit and are hereby affirmed.

Affirmed as modified.

GOOLSBY, J., and LITTLEJOHN, Acting Judge, concur.

---

[2] The guardian ad litem was awarded fees and costs of $959.00.