627 S.E.2d 754

**Phyllis J. LUKICH, Appellant,**

v.

**George Peter LUKICH, Respondent.**

**No. 4080.**

Court of Appeals of South Carolina.

Heard Nov. 8, 2005.

Decided Jan. 30, 2006.

Rehearing Denied March 28, 2006.

48

Margaret D. Fabri, of Charleston, for Appellant.

Peter D. DeLuca, Jr., of Goose Creek, for Respondent.

SHORT, J.:

Phyllis J. Lukich (Wife) appeals the family court's order barring her from using her decree of annulment of a prior marriage as a defense against George P. Lukich's (Husband) complaint to void their marriage as bigamous. Wife also contends the family court erred by holding Husband "technically in contempt" but ruling Husband did not have to comply with the temporary order pending the outcome of his motion to vacate that order. We affirm.

## FACTS

In March 1985, Husband and Wife participated in a marriage ceremony and lived together as a married couple for eighteen years. In 1999, the parties began to experience difficulties after Wife suffered a debilitating stroke. Thereafter, on August 21, 2002, Wife filed a complaint in Berkeley County for separate support and maintenance, alleging physical cruelty and adultery and seeking spousal support, equitable distribution, and attorneys' fees. After a temporary hearing, Judge Jack Landis issued a temporary order awarding Wife $1350 per month in alimony, $3500 in temporary attorneys' fees, and restraining both parties from encumbering or disposing of marital property.

During the course of discovery, Husband began to suspect Wife never obtained a divorce from Charles Havron, whom she married in 1973. Therefore, Husband made a discovery request that Wife produce a copy of the divorce decree from Havron. Although the South Carolina Department of Health and Environmental Control produced a marriage certificate for Wife and Havron, Wife could not produce a divorce decree for her marriage to Havron. On September 25, 2003 Husband filed a complaint in Berkeley County seeking to void his

marriage to Wife on the ground of bigamy, and a hearing was set for November 6, 2003.

On October 21, 2003, Wife filed a complaint in Charleston County to have her marriage to Havron annulled. An uncontested hearing was held on October 31, 2003 before Judge Frances Segars–Andrews. At the hearing Wife produced evidence that she and Havron were married during a night of heavy drinking, had never lived together as husband and wife, and shortly after the marriage Havron moved to Illinois. Havron submitted an affidavit corroborating Wife's testimony and did not contest the annulment. Judge Segars–Andrews granted Wife an annulment from Havron, declaring the marriage void *ab initio*.

After Wife faxed a copy of the order of annulment to Husband, Husband made a motion to intervene in Wife's annulment proceeding. Husband argued he had standing due to the effect the annulment would have on his pending action against Wife to void their marriage on the ground of bigamy. Judge Segars–Andrews denied Husband's motion to intervene, finding he did not have standing because he was not a party to the marriage.

On November 5, 2003, Wife filed a motion to dismiss Husband's complaint to void the marriage. Wife asserted that because her marriage to Havron had been annulled, Husband could no longer prove their marriage was bigamous, and, alternatively, Husband's complaint was procedurally defective. Judge Wayne Creech granted the motion to dismiss on the ground that Husband filed his complaint under the same case number as Wife's complaint for separate support and maintenance. However, Judge Creech ruled Wife was barred from using her order of annulment from Havron as a defense to Husband's action to void their marriage as bigamous. Wife appeals the ruling.

On January 14, 2004 Wife filed a rule to show cause, alleging Husband had failed to pay temporary support and was in violation of the temporary order. Judge Creech ruled that Husband was "technically" in contempt for failure to make support payments. However, Judge Creech (hereafter "the family court") ordered Husband "should not be sanctioned or required to make payment under the Temporary

Order until his Motion to vacate the alimony award is heard and determined by the Court." Wife's motion to alter or amend the order was denied. Wife appeals.[1]

## LAW/ANALYSIS

### I. ANNULMENT DECREE

■ Wife argues the family court erred by barring her from using the order of annulment from Havron as a defense to Husband's action to void their marriage as bigamous. Wife contends the annulment decree rendered her marriage to Havron void *ab initio*, which creates the legal fiction that the marriage never existed. Wife asserts that because her marriage to Havron was rendered a non-occurrence in the eyes of the law, her marriage to Husband is not bigamous even though she was, in reality, married to Havron at the time she and Husband participated in the marriage ceremony. We disagree.

■■ Section 20–1–80 of the South Carolina Code Annotated sets forth the principle that "[a]ll marriages contracted while either of the parties has a former wife or husband living shall be void." This statute codifies the overriding public policy of this state against bigamy. *Johns v. Johns,* 309 S.C. 199, 203, 420 S.E.2d 856, 859 (Ct.App.1992) (holding the public policy of not recognizing bigamous marriages overrides the public policy supporting the finality of judgments). A person who is married cannot enter into a valid marriage by participating in a marriage ceremony with a new person. *Day v. Day,* 216 S.C. 334, 338, 58 S.E.2d 83, 85 (1950) ("A mere marriage ceremony between a man and a woman, where one of them has a living wife or husband, is not a marriage at all. Such a marriage is absolutely void, and not merely voidable.").

Therefore, we are left to consider the question of whether an annulment which decrees a pre-existing marriage void *ab initio* can be used as a defense to an action to void a marriage as bigamous because the annulment relates back so as to give validity to a prior bigamous marriage. Although our courts have not specifically addressed this issue, we have generally

---

1. The parties made a motion to consolidate the two appeals and we granted the motion.

held that because a bigamous marriage is void at its inception and not merely voidable, it cannot be ratified or confirmed and thereby made valid. *Johns*, 309 S.C. at 201, 420 S.E.2d at 858; *see also Callen v. Callen*, 365 S.C. 618, 623, 620 S.E.2d 59, 62 (2005) (holding when there is an impediment to marriage, such as one party's existing marriage to a third person, no common-law marriage may be formed and the relationship is not automatically transformed into a common-law marriage once the impediment is removed); *Prevatte v. Prevatte*, 297 S.C. 345, 349, 377 S.E.2d 114, 117 (Ct.App.1989) (holding a relationship illicit at its inception does not ripen into a common-law marriage once the impediment to marriage is removed and the parties must agree to enter into a common-law marriage after the impediment is removed) (quoting *Yarbrough v. Yarbrough*, 280 S.C. 546, 551, 314 S.E.2d 16, 19 (Ct.App.1984)); *Kirby v. Kirby*, 270 S.C. 137, 140, 241 S.E.2d 415, 416 (1978) (same).

Wife argues *Joye v. Yon*, 355 S.C. 452, 586 S.E.2d 131 (2003), supports her position in the case at bar. In *Joye*, the parties divorced and Husband was ordered to pay Wife periodic alimony. *Id.* at 454, 586 S.E.2d at 132. Thereafter, Wife entered into a new marriage with Vance, so Husband stopped making alimony payments to Wife. *Id.* However, two months into the marriage, Wife discovered that Vance had never divorced his former spouse, so she had the marriage annulled. *Id.* Wife then brought a contempt action against Husband for failure to make alimony payments, arguing that because her subsequent marriage was void *ab initio*, Husband's obligation to make alimony payments never terminated. *Id.* The supreme court considered the novel issue of whether an annulment of a remarriage reinstates a previous spouse's periodic alimony obligation. *Id.* at 454, 586 S.E.2d at 133.

After discussing several approaches taken by other jurisdictions, our supreme court held the family court should apply the principles of equity and utilize a case by case approach to determine whether the payor spouse's periodic alimony obligation is revived after the payee spouse's subsequent marriage is annulled. *Id.* at 456, 586 S.E.2d at 134. The court also held that regardless of whether the family court determined to reinstate periodic alimony or not, Husband had no obligation to pay retroactive alimony to Wife for the time period that

Wife was married to her bigamous Husband. *Id.* at 457, 586 S.E.2d at 134.

The *Joye* case, though not directly applicable to the facts in the instant case, leaves open the possibility that an annulment may operate to revive a previous spouse's alimony obligation. However, the supreme court did not hold the annulment created the presumption that the Husband's alimony obligation never terminated. *Id.* at 456, 586 S.E.2d at 134. Instead, the supreme court explicitly stated that Husband had no obligation to pay alimony for the time period Wife thought she was married to Vance, even though the marriage was void *ab initio. Id.* at 457, 586 S.E.2d 131, 585 S.E.2d at 134. Therefore, *Joye* does not support Wife's position and is not controlling.

As this case involves a novel issue of law in South Carolina, "we look to other jurisdictions for edification, enlightenment, and guidance." *State v. Mitchell,* 362 S.C. 289, 299–300, 608 S.E.2d 140, 145 (Ct.App.2005). In *Scarboro v. Morgan,* 233 N.C. 449, 64 S.E.2d 422 (N.C.1951), the North Carolina Supreme Court addressed the issue in a factually similar case. In *Scarboro,* Wife entered into a marriage with Husband while the Wife was lawfully married to another man. 233 N.C. at 451, 64 S.E.2d at 423. After Husband died, his heirs brought suit to declare his marriage to Wife void as bigamous. *Id.* at 450, 64 S.E.2d at 422. Wife argued her motion for nonsuit should have been granted for failure to make out a case of bigamous marriage against her. *Id.* at 451, 64 S.E.2d at 423. She asserted the trial court erred in refusing to permit her to offer into evidence an annulment decree that declared her previous marriage void *ab initio. Id.* at 451–52, 64 S.E.2d at 423. As in the case at bar, the judgment granting Wife an annulment from her previous marriage was rendered after the suit to have her marriage to Husband declared void was instituted. *Id.* at 452, 64 S.E.2d at 423. The North Carolina Supreme Court held that the underlying annulment decree was invalid because it was in conflict with a controlling statute. *Id.* at 452, 64 S.E.2d at 423–24. However, the court also stated: "But should we concede, arguendo, that the judgment is valid, it would be effective only from the date of rendition and would not affect the instant case so as to give retroactive

validity to a prior bigamous marriage." *Scarboro*, 233 N.C. at 452, 64 S.E.2d at 424.

Additionally, the general rule applicable in situations as before us is stated in 52 Am.Jur.2d Marriage 57:

[A]part from statute, bigamous marriage does not acquire validity when the prior subsisting marriage is legally terminated by divorce or by the death of the first spouse. The same rule is generally followed where the prior subsisting marriage is annulled after the second marriage is contracted, even though the purpose of an annulment proceeding is to declare that no valid marriage ever took place between the parties or that no valid marriage relation ever existed between the parties. Even where the annulment decree expressly declares the first marriage null and void ab initio, it does not relate back so as to validate the second marriage. In order for the subsequent marriage to be valid, it has been held that there must be a new ceremony following the termination of the earlier marriage.

■ Based on our strong public policy against recognizing bigamous marriages and our reading of relevant authority, we find an annulment that declares a pre-existing marriage void *ab initio* does not relate back so as to give validity to a marriage that was bigamous before the annulment was granted.[2] Here, Wife had a living spouse at the time she contracted for marriage with Husband. Because Wife's annulment was not granted until after she contracted for marriage with Husband, the annulment does not validate her marriage with Husband. Therefore, we hold the trial court did not abuse its discretion in barring Wife from using her annulment decree as a defense to Husband's bigamy action.

Additionally, Wife's argument that she had a good-faith belief she was not married to Havron does not change the rule

2. We note that our holding is limited to the facts of the case at bar, e.g. the situation where the annulled marriage would be valid but for an annulment decree declaring the marriage *ab initio*. Our holding is not meant to affect a party who enters into one of the three types of marriages that never have legal validity in South Carolina, namely marriages that are void *ab initio* by operation of statute: (1) bigamous marriages, S.C.Code Ann. § 20–1–80 (Supp.2004); (2) same sex marriages, S.C.Code Ann. § 20–1–15 (Supp.2004); and (3) marriages of minors under the age of 16, S.C.Code Ann. § 20–1–100 (Supp.2004).

that the bigamous marriage was void. Even if Wife was acting under a good-faith belief, South Carolina will not recognize her bigamous second marriage because to do so would violate public policy. *See Johns*, 309 S.C. at 202–03, 420 S.E.2d at 858–59 (citations omitted).

Wife contends the family court should have considered additional information in her motion to alter or amend because to do so would have shed light on the circumstances surrounding her marriage to Havron. Wife also argues the family court, without explicitly stating so, barred her from using her annulment decree as a defense to Husband's action to void the marriage because she did not notify Husband she was not divorced from Havron and she did not notify Husband of the annulment hearing. However, it is undisputed Wife had not divorced or obtained an annulment from Havron at the time she contracted for marriage with Husband. Having held Wife may not use her annulment decree as a defense to Husband's bigamy action on the basis that an annulment that declares a pre-existing marriage void *ab initio* does not relate back so as to give validity to a marriage that was bigamous at the time the annulment was granted, we need not address these issues. Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal."); *see also I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 417, 526 S.E.2d 716, 722 (2000).

## II. CONTEMPT

Wife argues that although the family court ruled Husband was "technically in contempt for failure to make support payments as ordered," the ruling was tantamount to finding Husband was not in contempt because the court ordered Husband was not required to comply with the temporary order pending the outcome of his motion to vacate that order. We disagree.

A decision on contempt rests within the sound discretion of the trial court. *Tirado v. Tirado*, 339 S.C. 649, 654, 530 S.E.2d 128, 131 (Ct.App.2000). "On appeal, a decision regarding contempt should be reversed only if it is without evidentiary support or the trial judge has abused his discretion." *Stone v. Reddix–Smalls*, 295 S.C. 514, 516, 369 S.E.2d

840, 840 (1988). Our review of the order reveals the family court found Husband in contempt. The court declined to impose sanctions against Husband because the validity of his alimony obligation was in question and Husband had a pending motion to vacate the alimony award. Because there is no requirement that sanctions be imposed upon the finding of contempt, we find no abuse of discretion in the family court's ruling. *Sutton v. Sutton*, 291 S.C. 401, 409, 353 S.E.2d 884, 888–89 (Ct.App.1987) ("Although the Family Court is empowered to find and punish for contempt, there is no requirement that sanctions be imposed upon a finding of contempt.").

The family court ordered Husband "should not be ... required to make payment under the Temporary Order until his Motion to Vacate the alimony award is heard and determined by the Court." The court also ruled that alimony would continue to accrue in the meantime and retained personal jurisdiction to determine whether the temporary order should be vacated. Wife also contends the family court was without authority to stay enforcement of the temporary order *sua sponte*. We disagree.

Wife contends the court had no authority to stay the enforcement of the temporary order because the only issue before the court was whether Husband was in contempt. However, Wife essentially raised the issue in bringing the rule to show cause. Wife claimed Husband was in contempt for failing to make alimony payments in violation of the temporary order. Husband defended, asserting he had filed a motion to vacate the award approximately four months earlier, but the matter had not been set for hearing. Based on these facts, the issue of whether the temporary order should be enforced pending the outcome of Husband's motion to vacate the alimony award was incidental to the court's determination of contempt. *See Taylor v. Taylor*, 294 S.C. 296, 299, 363 S.E.2d 909, 911 (Ct.App.1987) (holding the issue of child support arrearages was necessarily raised by a rule to show cause; therefore, the family court had authority to find father had purged himself of arrearages in the contempt proceeding). Therefore, we find the family court did not err in staying the enforcement of the temporary order.

**AFFIRMED.**

58

GOOLSBY J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, J. (dissenting):

I disagree with the reasoning and analysis of my fellow judges in the case *sub judice.* I VOTE to reverse and remand for a new trial.

After perturbation and disquietude resulting from my analysis of the evidentiary record, I have come to the ineluctable conclusion to dissent. My concernment is nexed to the lack of viability given to the annulment declaring the marriage "void *ab initio* " by the majority.

The annulment ruling the marriage "void *ab initio* " was an arbitrament by a family court judge. The family court had subject matter jurisdiction at the time of the issuance of the annulment.

The majority has misconstrued and misapplied the efficacy of the annulment order of the family court. The Latin phrase "*ab initio* " has definite and certain meaning. "*Ab initio* " in Latin means "from the beginning." An agreement is said to be "void *ab initio* " if it has at no time had any legal validity.

The majority opinion fails to recognize that the family court judge had the authority and power to issue the annulment and to order the marriage "void *ab initio.*"

I **VOTE** to **REVERSE.**