SHORT, J.:
**593 In this case involving the estate of James Brown, six of Brown's children appeal from the trial court's grant of Tommie Ray *773 Brown's (Respondent's) motion for summary judgment, arguing the trial court erred in finding the marriage between Respondent and Brown was not bigamous. We affirm.
FACTS
Respondent married Javed Ahmed on February 17, 1997. Thereafter, she married Brown on December 14, 2001.[1] Respondent brought an action to annul her marriage to Ahmed on December 15, 2003, and in its April 15, 2004 order, the **594 Charleston County Family Court found her marriage to Ahmed was void ab initio.
The court found Ahmed was married at the time of his marriage to Respondent, and therefore, he lacked capacity to marry her.[2]
Brown and Respondent separated after Brown was arrested on January 28, 2004, for criminal domestic violence as a result of an altercation between Brown and Respondent. Brown sought an annulment from Respondent on May 6, 2004, asserting Respondent was legally barred from entering into a marriage to Brown because she was married to Ahmed at the time of their marriage ceremony. Respondent filed a counterclaim, seeking a divorce on the grounds of physical cruelty and adultery. In a consent order of dismissal filed by the Aiken County Family Court on August 16, 2004, the parties informed the court they had reached an agreement, and Respondent agreed to "forever waive any claim of a common law marriage to [Brown], both now and in the future." Respondent states she and Brown reconciled and lived together until his death.
Brown died on December 25, 2006. His will devised his personal effects to six named children: Deanna Brown-Thomas, Yamma Brown, Venisha Brown, Terry Brown, Michael Deon Brown, and Daryl Brown (collectively, Appellants). Brown's will was admitted to probate on January 18, 2007. On January 26, 2007, the Aiken County Probate Court removed the matter to the circuit court, and the probate court continued to remove all matters filed in Brown's Estate to the circuit court. On February 1, 2007, Respondent brought an action to **595 set aside Brown's entire will, which did not name her or their son as beneficiaries, based on alleged undue influence and fraud.[3] She separately claimed an elective share or an omitted spouse's share of the Brown estate.
Appellants and Respondent participated in mediation on August 10, 2008, and reached a settlement agreement. The agreement states "[t]he settling parties intend for the agreement to be a binding private settlement agreement but also are seeking court approval of the settlement." The parties agreed Respondent "was the legal wife of [Brown], during his lifetime and at the time of his death, and qualifies as his surviving spouse." The court approved the settlement agreement on May 26, 2009. However, on May 8, 2013, the South Carolina Supreme Court reversed *774 and remanded the approval of the settlement to the trial court because of a lack of evidence showing a fair and reasonable settlement of a good faith controversy. See Wilson v. Dallas , 403 S.C. 411, 450-51, 743 S.E.2d 746, 767-68 (2013). The court stated that "even if [Respondent was] able to establish a claim as Brown's surviving spouse, she executed a prenuptial agreement, in which she indicated that she had the opportunity to consult with counsel of her own choosing and waived all rights to Brown's property or any statutory claims against his estate," and a valid prenuptial agreement would normally preclude any right to an elective share. Wilson , 403 S.C. at 440, 743 S.E.2d at 762.
In the interim, a hearing was held and several other motions were filed, but what is relevant to this appeal is that on April 28, 2014, Respondent filed a motion for summary judgment, asserting there was no genuine issue of material fact as to her marriage to Brown, and she was entitled to summary judgment on the issue of the validity of her marriage as a matter of law. On June 2, 2014, Appellants joined in on a motion for summary judgment, limited to the sole assertion that Respondent was not Brown's surviving spouse at the time of his death.[4] After a hearing on the motions, the trial court filed its **596 order on January 13, 2015, granting Respondent's motion for summary judgment. The court found Respondent and Ahmed never had a valid marriage because it was a bigamous marriage, and thus, Respondent had no impediment to her valid marriage to Brown. Appellants filed motions to reconsider. In an order filed October 26, 2015, the trial court denied Appellants' motions to reconsider. These appeals followed.[5]
STANDARD OF REVIEW
A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issues of fact exist, the trial court must view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the party opposing summary judgment." Pallares v. Seinar , 407 S.C. 359, 365, 756 S.E.2d 128, 131 (2014). "An appellate court applies the same standard used by the trial court under Rule 56(c) when reviewing the grant of a motion for summary judgment." Spence v. Wingate , 395 S.C. 148, 156, 716 S.E.2d 920, 925 (2011). "Because summary judgment is a drastic remedy, it should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial." Id.
LAW/ANALYSIS
I. Bigamous Marriage
Appellants Deanna Brown-Thomas, Yamma Brown, and Venisha Brown argue the trial court erred in not finding **597 Respondent's attempted marriage to Brown was bigamous as a matter of law due to her failure to terminate her first marriage prior to her second marriage.[6] We disagree.
Section 20-1-80 of the South Carolina Code (2014) provides:
*775 All marriages contracted while either of the parties has a former wife or husband living shall be void. But this section shall not extend to a person whose husband or wife shall be absent for the space of five years, the one not knowing the other to be living during that time, not to any person who shall be divorced or whose first marriage shall be declared void by the sentence of a competent court.
Appellants argue the trial court erred in applying the 2004 annulment order to validate Respondent's 2001 marriage to Brown, which they assert was bigamous under section 20-1-80. They maintain a subsequent order declaring a first marriage void ab initio does not relate back so as to validate a second bigamous marriage. Appellants also argue the trial court erred in making a distinction between later-annulled marriages that were "void" and those that were "voidable." They state it does not matter whether Respondent's 1997 marriage to Ahmed was "void" or "voidable" because Respondent's first marriage must be declared void by a competent court before she can remarry.
The trial court in this case stated, "A void marriage is treated differently from a voidable marriage. A voidable marriage is valid unless and until a court rules that such a marriage is invalid, but a void marriage is never valid for any purpose." The court further stated, "South Carolina law precludes this Court from giving any effect whatsoever to a bigamous marriage. Because the Court cannot give any effect to a bigamous marriage, it is required to hold that the bigamous marriage was never a marriage." Therefore, the court held Respondent and Ahmed never had a valid marriage at any point in time, and Respondent had no impediment to her valid marriage to Brown.
The South Carolina Supreme Court in Lukich v. Lukich found that under the terms of section 20-1-80, the **598 wife's " 'marriage' to [h]usband # 2 was 'void' from the inception since at the time of that marriage she had a living spouse and that marriage had not been 'declared void.' " 379 S.C. 589, 592, 666 S.E.2d 906, 907 (2008) (quoting S.C. Code Ann. § 20-1-80 ). "A mere marriage ceremony between a man and a woman, where one of them has a living wife or husband, is not a marriage at all. Such a marriage is absolutely void, and not merely voidable." Day v. Day , 216 S.C. 334, 338, 58 S.E.2d 83, 85 (1950) ; see also Howell v. Littlefield , 211 S.C. 462, 466, 46 S.E.2d 47, 48 (1947) ("[Husband's] existing marriage ... incapacitated him ... to contract another marriage. ..."); Johns v. Johns , 309 S.C. 199, 201, 420 S.E.2d 856, 858 (Ct. App. 1992) ("At the time the parties began residing together in September 1983, and throughout their cohabitation, the respondent was legally married to another woman. Thus, any marriage between the parties while [the] respondent had a subsisting marriage was void as a matter of public policy. ... It was void from its inception, not merely voidable, and, therefore, cannot be ratified or confirmed and thereby made valid.").
While an annulment order relates back in most senses, it does not have the ability to validate the bigamous second "marriage." Since there was no marriage under the plain terms of the statute when the ceremony between Wife and Husband # 2 was performed in 1985, there was nothing to be "revived" by the annulment order in 2003.
Lukich , 379 S.C. at 592, 666 S.E.2d at 907.
In Wilson v. Dallas , 403 S.C. at 434 n.16, 743 S.E.2d at 759 n.16, our supreme court stated in a footnote:
[Respondent]'s request for an annulment from Ahmed was hastily granted by the family court in Charleston County during the pendency of Brown's separate annulment action against her. The circuit court noted the decision of the Court of Appeals in Lukich v. Lukich , 368 S.C. 47, 627 S.E.2d 754 (Ct. App. 2006), in which the Court of Appeals held that an annulment declaring a spouse's first marriage void could not retroactively validate the spouse's second marriage. The circuit court distinguished Brown's situation, opining that the rule in Lukich did not apply *776 where the first marriage was never valid because one of the parties was already married. This Court has since affirmed Lukich , in Lukich v. Lukich , 379 S.C. 589, 666 S.E.2d 906 (2008). We **599 express no opinion, however, on the circuit court's interpretation here.
In Lukich , there was no impediment to the first marriage; thus, the wife had to have the first marriage annulled for the second marriage to be valid. Here, Respondent's first marriage to Ahmed was invalid or void from the beginning because he was already married to someone else at the time of the marriage. As a result, had Respondent's marriage to Ahmed not been annulled, the second marriage to Brown would still have been valid. Respondent was married to Brown in a valid ceremonial marriage, as evidenced by a marriage license and certificate. Her marriage to Ahmed was properly held bigamous in a final unappealed judgment by the family court, which provides she had no impediment to her marriage to Brown. Therefore, we find the trial court did not err in finding Respondent was married to Brown.
II. Summary Judgment
Appellants Deanna Brown-Thomas, Yamma Brown, and Venisha Brown argue the trial court erred in not granting their motion for summary judgment because Respondent failed to present any admissible evidence that her marriage to Ahmed was invalid.[7]
Appellants argue the trial court granted Respondent's motion for summary judgment on the purported ground that Respondent's marriage to Ahmed was bigamous without any evidentiary support for its finding. They also assert the trial court erred in relying on the annulment order for the truth of the matter asserted in its findings because it was inadmissible hearsay not subject to an exception. Appellants assert the evidence presented to the trial court established that Ahmed was not married when he married Respondent in 1997. Specifically, that Ahmed stated he was not presently married on their Texas marriage license. They assert, in contrast, that the only evidence that Ahmed was married at the time is the annulment order, which was based solely on Respondent's testimony.
**600 The denial of a motion for summary judgment is not directly appealable. Ballenger v. Bowen , 313 S.C. 476, 476, 443 S.E.2d 379, 380 (1994). Therefore, we decline to address this issue. However, to the extent Appellants also argue the trial court erred in granting Respondent's motion for summary judgment, we find the trial court had no subject matter jurisdiction to relitigate the family court order because only the family court has jurisdiction over annulments. S.C. Code Ann. § 63-3-530(A)(6) (2010) ("The family court has exclusive jurisdiction ... to hear and determine actions for the annulment of marriage."). As a result, the trial court did not err in granting Respondent's motion for summary judgment because the annulment order was conclusive as to Respondent's marriage to Ahmed.
III. Collateral Estoppel
Appellants Deanna Brown-Thomas, Yamma Brown, and Venisha Brown argue the trial court erred in holding the findings of fact and conclusions of law in the annulment order were preclusive as to Appellants.[8] We disagree.
"Collateral estoppel, also known as issue preclusion, prevents a party from relitigating an issue that was decided in a previous action, regardless of whether the claims in the first and subsequent lawsuits are the same." Carolina Renewal, Inc. v. S.C. Dep't of Transp. , 385 S.C. 550, 554, 684 S.E.2d 779, 782 (Ct. App. 2009). "The party asserting collateral estoppel must demonstrate that the *777 issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." Id.
Appellants argue the annulment order binds "all the world" as to the marital status of Respondent and Ahmed as of April 15, 2004, the date the order was filed. However, they assert the annulment order's findings of fact and conclusions of law are not binding on those who were not parties to that proceeding, such as Brown and Appellants.
**601 Appellants also argue the trial court erred in finding they are collaterally estopped from contesting the findings of fact and conclusions of law in the annulment order. They assert the first element of collateral estoppel is not met because the order was essentially granted by default and the issue of Ahmed's alleged bigamy was never actually litigated. Appellants also assert Ahmed was not properly served with Respondent's summons and complaint because the publication was buried in the Houston Chronicle on page two of the classified section and the process server did not state he searched United States immigration databases or looked for Ahmed in Pakistan. Appellants further argue collateral estoppel only applies to parties to the prior action and their privies, and the only named parties in the annulment action were Respondent and Ahmed. They assert Brown was not in privity with Respondent due to his alleged interest in the outcome, and Brown's and Appellants' interests are neither identical to nor closely aligned with Respondent or Ahmed. Appellants assert merely paying Respondent's legal fees for the annulment action did not place him in privity with Respondent and did not give him control over the litigation. Finally, Appellants argue that even if the elements of collateral estoppel were present, application of the doctrine is discretionary and should not be applied to this case because it would be inequitable to bar Appellants from challenging the hasty findings of a prior action in which Brown was not a named party, had no right to intervene, did not control the proceedings, and his interests were not heard or adjudicated.
We find Appellants lacked standing to contest the annulment order, just as Brown did not have standing to intervene in the annulment action between Respondent and Ahmed. See Lukich , 368 S.C. at 51, 627 S.E.2d at 756 (denying the husband's motion to intervene in the wife's annulment proceeding and finding he did not have standing because he was not a party to the marriage). Any rights Appellants have are derivative from Brown. See Watson v. Watson , 172 S.C. 362, 369-70, 174 S.E. 33, 36 (1934) ("[A]s it is only the children of Mr. Watson who are contesting this question, they are completely estopped, as was their father, from disputing the validity of the divorce in question. If they cannot dispute the validity of the divorce, then there is no question of the validity **602 of the marriage to the demandant which they can make, and hence there is no question of her right of dower in the real estate which he owned during coverture."); Neely v. Thomasson , 365 S.C. 345, 354, 618 S.E.2d 884, 889 (2005) ("Because the issue of paternity was raised and ruled upon in a prior action, Decedent, if alive, would have been barred from challenging paternity at a later date. As a result, Decedent's heirs are likewise barred from asserting claims that Decedent himself would have been barred from asserting. Moreover, we find that it would be unjust to allow Decedent's siblings to assert a claim that Decedent himself never chose to assert during his lifetime." (citations omitted) ). During his life, Brown availed himself of the method available to him by bringing his own annulment action against Respondent to invalidate his marriage to her. However, Brown and Respondent agreed to dismiss the action, and Brown did not bring another action prior to his death.
Appellants also argue that while the annulment order binds them as to the marital status of Respondent and Ahmed as of April 15, 2004, the annulment order's findings of fact and conclusions of law are not binding on those who were not parties to that proceeding. However, Respondent is only asserting the family court's order as to the status of her marriage to Ahmed. As for *778 Appellants' collateral estoppel argument, (1) the annulment was actually litigated as the court reviewed the evidence presented and found it was sufficient to meet Respondent's burden of proof; (2) the validity of the marriage between Respondent and Ahmed was determined in the annulment action as it was the entire purpose of the action; and (3) the issue was necessary to support the prior judgment. Therefore, we find the trial court did not err in holding the findings of fact and conclusions of law in the annulment order were preclusive as to Appellants.
IV. Discovery Stay
Appellants Deanna Brown-Thomas, Yamma Brown, and Venisha Brown argue the trial court erred in staying discovery and granting Respondent's motion for summary judgment despite genuine issues of material fact. We disagree.
**603 Appellants argue the court erred in not allowing the parties to conduct any discovery pending its ruling on Respondent's motion, yet allowed her to file two self-serving affidavits in support of her motion, and the court sealed her handwritten diaries. They assert this prevented them from using potentially relevant evidence that may have been adverse to Respondent.
The parties all agreed to the stipulation of facts in this case, which resolves the material factual issues in the action. The reason Appellants seek additional discovery is to relitigate the annulment order. We already determined Appellants are bound by the annulment order. Therefore, we find the trial court did not err in staying discovery pending the decision on Respondent's motion for summary judgment as to the status of her marriage to Brown.
CONCLUSION
Accordingly, the decision of the trial court is
AFFIRMED.
THOMAS and HILL, JJ., concur.

On her marriage license to Brown, Respondent stated it was her first marriage. In the parties' joint stipulation of facts filed September 5, 2014, it states, "From the February 17, 1997 marriage ceremony between [Respondent] and [Ahmed] through the December 14, 2001 marriage ceremony between [Respondent] and [Brown], no order of any court or other occurrence of which [Respondent] is aware at this time ended or caused to end any marriage that certain parties assert existed between [Respondent] and [Ahmed]."

Respondent stated she thought she married Ahmed, but after the marriage ceremony, he told her he would not live with her because he was married to three or more women in Pakistan. She claims the marriage was never consummated, and Ahmed only married her to become a United States citizen. In the parties' joint stipulation of facts, it states Respondent had "no documents or other tangible evidence evidencing [Ahmed] was married to another person when [Respondent] and [Ahmed] participated in the February 17, 1997 marriage ceremony" and Respondent could not identify any person "who can testify that [Ahmed] was married to another person when [Respondent] and [Ahmed] participated in the February 17, 1997 marriage ceremony." According to Respondent, Ahmed was never located, and he did not "appear, answer the complaint or otherwise plead within the time required, participate in or otherwise defend himself in the Ahmed Annulment Action."

Brown and Respondent have one son together, James Joseph Brown, II, who was born on June 11, 2001.

The Limited Special Administrator (LSA) of the Estate of James Brown filed the motion. In the motion, Appellants attached as an exhibit an affidavit from an attorney who said he spoke with Ahmed, who was in Pakistan. The attorney stated Ahmed told him he was not married to anyone else when he married Respondent, and he and Respondent lived together as husband and wife for a period of time following the 1997 marriage. Appellants also attached the marriage license between Ahmed and Respondent that stated Ahmed was not married at the time of the application.

Michael Deon Brown and Daryl Brown adopted the briefs of the LSA. The LSA notified this court that it reached a settlement with Respondent and sought to withdraw its appeal. On September 19, 2017, this court granted the LSA's request to withdraw its appeal and stated the briefs submitted by the LSA were to be made a part of the record as the briefs of Michael Deon Brown and Daryl Brown.

Appellants Terry Brown, Michael Deon Brown, and Daryl Brown also make essentially this same argument in their briefs; therefore, we combine the arguments for this issue.

Appellant Terry Brown makes essentially this same argument in his brief; therefore, we combine the arguments for this issue.

Appellants Terry Brown, Michael Deon Brown, and Daryl Brown all make essentially this same argument in their briefs; therefore, we combine the arguments for this issue.