■ SANDRA JENNINGS, Also Known as SANDRA CRONSBERG, Appellant, v WILLIAM M. HURT, Respondent.—Order, Supreme Court, New York County (Jacqueline Silbermann, J.), entered on or about May 17, 1989, which denied plaintiff's motion for leave to amend her complaint, and order of the same court, entered October 4, 1989, which, after a nonjury trial, found that plaintiff was not the common-law wife of defendant, are unanimously affirmed, without costs.

In her amended complaint, plaintiff alleged that she and defendant had entered into a common-law marriage by virtue of having held themselves out as husband and wife in South Carolina from October 31, 1982 to January 10, 1983. After

meeting in 1981, the parties began living together in New York City. On October 31, 1982, plaintiff joined defendant in South Carolina where he was filming a movie. When plaintiff became pregnant in 1982, defendant, who was married to another woman, commenced divorce proceedings with the divorce becoming final on December 3, 1982. During that same year, defendant's counsel drafted a financial agreement for the parties.

The relationship between the parties in South Carolina became somewhat volatile but plaintiff alleged that during one of their arguments, defendant told her that "as far as he was concerned, we were married in the eyes of God" and that they had "a spiritual marriage". He also purportedly told her that "[w]e were more married than married people."

Plaintiff's claim that she is defendant's common-law wife is based on these events. Defendant's testimony directly contradicted that of plaintiff.

The record fails to support plaintiff's claim that she is defendant's common-law wife. Notably, plaintiff never mentioned the conversation regarding the "spiritual marriage" at her deposition. The record also reveals that a statement in which plaintiff allegedly signed her name as "Sandra Cronsberg Hurt" was an altered copy in which the name "Hurt" had been inserted. In 1983, defendant filed an affidavit with the Putative Fathers' Registry in New York which acknowledged his paternity of plaintiff's child. Filing this document, designed to ensure the child's legitimacy, would have been unnecessary had the parties in fact been married. Moreover, in 1984, one year after the parties left South Carolina, drafts of a relationship agreement continued to state "whether or not the parties hereafter marry each other". Other documents introduced into evidence listed defendant as single and plaintiff as his "friend" rather than his spouse. Of the many witnesses who testified and of the numerous affidavits offered into evidence, almost all demonstrated that the parties never held themselves out as being married nor were they perceived as husband and wife.

To establish a common-law marriage in South Carolina, the proponent must establish "an intention on the part of both parties to enter into a marriage contract" (Ex Parte Blizzard, 185 SC 131, 133, 193 SE 633, 635). The mutual agreement necessary to create such a marriage "must be conveyed with such a demonstration of intent and with such clarity on the part of the parties that marriage does not creep up on either of them and catch them unawares. One cannot be married

unwittingly or accidentally" *(Collier v City of Milford,* 206 Conn 242, 251, 537 A2d 474, 479). The evidence in the instant case clearly demonstrates that there was neither a mutual intent nor an agreement to enter into a marriage contract. Consequently, there was no common-law marriage.

We further find that the Supreme Court properly denied plaintiff's motion for leave to amend her complaint to allege three new causes of action since these causes of action were insufficient as a matter of law *(see, East Asiatic Co. v Corash,* 34 AD2d 432). The first proposed cause of action, to impose a constructive trust on an apartment owned by defendant, cannot stand since plaintiff failed to establish that she had a property interest in the apartment. Nor did she establish all of the necessary elements for a constructive trust *(see, Onorato v Lupoli,* 135 AD2d 693).

The second proposed cause of action, relating to defendant's alleged breach of a promise to support plaintiff in the future, is too vague to sufficiently state a cause of action *(see, Dombrowski v Somers,* 41 NY2d 858). Moreover, while plaintiff claims that this cause of action sounds in fraud, it arose directly from the breach of contract and is therefore a contract claim instead of a cause of action in fraud *(Marks v Nassau County Assn. for Help of Retarded Children,* 135 AD2d 512). The third proposed cause of action, that defendant falsely promised to support plaintiff if she would have his child and give up her career, is void as against public policy *(see, McCall v Frampton,* 81 AD2d 607). The law does not recognize a cause of action for sacrificing career opportunities in order to act as a "wife" *(see, Baron v Jeffer,* 98 AD2d 810). Concur—Sullivan, J. P., Carro, Milonas, Rosenberger and Smith, JJ.