620 S.E.2d 59

**Page D. CALLEN, Respondent,**

v.

**Sean R. CALLEN, Appellant.**

**No. 26041.**

Supreme Court of South Carolina.

Heard June 1, 2005.
Decided Sept. 19, 2005.

620

Emma I. Bryson, John O. McDougall, and Peter G. Currence, all of McDougall & Self, of Columbia, for Appellant.

Lori Dandridge Stoney and Paul E. Tinkler, both of Charleston, for Respondent.

Jon A. Mersereau, of Charleston, for Guardian Ad Litem.

Justice PLEICONES.

At issue in this case is whether Appellant Sean Callen (Sean) and Respondent Page Durkee Callen (Page) entered into a common-law marriage. Page filed an action for divorce, and Sean answered that the parties were never married. The family court bifurcated the case and held a hearing to determine whether a common-law marriage existed. The court ruled that there was a marriage and, further, that Page was entitled to attorney fees. Sean appealed, and we certified the case pursuant to Rule 204(b), SCACR. We reverse the family court's decision and remand the case for a new hearing.

## BACKGROUND

Sean and Page's relationship began in Florida when the parties were in college, about fifteen years before Page brought the divorce action. During the relationship, Sean and Page had two children. The first was born at a fairly early point in the relationship, and the second was born five years later.

According to Page, the parties considered themselves married almost from the beginning. Sean denies that they ever did. According to Sean, the relationship was purely sexual until they conceived their first child. He says that thereafter, sharing children was the only reason that the parties maintained any relationship.

Throughout the course of the relationship, Sean lived in various jurisdictions, including Florida, New York, Massachusetts, and Ireland. Page claims that she lived with Sean in all of these places. Sean says that he lived alone in each and that Page just visited him from time to time.

Eventually, Sean purchased a residence in Savannah, Georgia. Page asserts that Sean did this so that he had a place to

stay when he was working there. According to Page, Sean was actually residing with her and the children in Florida. Conversely, Sean argues that his residence in Savannah was permanent and that he never lived with Page and the children in Florida.

In August 2000, Page and the children moved from Florida to Charleston. Page claims that Sean moved to Charleston with them and that they lived together there as a family. Sean denies this, saying that he maintained his residence in Savannah and that any time spent in Charleston was for visiting his children.

The family court ruled that Sean and Page had a common-law marriage, meaning that Page could proceed with the divorce action. The family court also ordered Sean to pay Page $113,405.98 as attorney fees.

## ISSUES

I. Whether the family court erred in finding that Sean and Page entered into a common-law marriage.

II. Whether the family court erred in admitting the testimony of witnesses whose names were not disclosed in answers to interrogatories.

III. Whether the family court erred in awarding attorney fees to Page.

## ANALYSIS

Whether a common-law marriage exists is a question of law. *Campbell v. Christian*, 235 S.C. 102, 104, 110 S.E.2d 1, 2 (1959). The proponent of the alleged marriage has the burden of proving the elements by a preponderance of the evidence. *Ex parte Blizzard*, 185 S.C. 131, 133, 193 S.E. 633, 634 (1937). The trial court's findings of fact will be upheld if they are supported by any evidence in the record. *Pittman v. Lowther*, 363 S.C. 47, 50, 610 S.E.2d 479, 480 (2005) (stating that in law actions tried without a jury, the factual findings of the trial judge are to be upheld if supported by any evidence). In this case we do not address the sufficiency of the evidence, because the family court's findings of fact are so tainted by

errors of law as to require us to reverse the court's decision and remand the case for a new hearing.

## I. COMMON-LAW MARRIAGE

The family court failed to apply the proper standard for determining whether Sean and Page entered into a common-law marriage.

A common-law marriage is formed when two parties contract to be married. *Johnson v. Johnson,* 235 S.C. 542, 550, 112 S.E.2d 647, 651 (1960). No express contract is necessary; the agreement may be inferred from the circumstances. *Id.; Kirby v. Kirby,* 270 S.C. 137, 140, 241 S.E.2d 415, 416 (1978). The fact finder is to look for mutual assent: the intent of each party to be married to the other and a mutual understanding of each party's intent. Consideration is the participation in the marriage. If these factual elements are present, then the court should find as a matter of law that a common-law marriage exists.

Further, when the proponent proves that the parties participated in "apparently matrimonial" cohabitation, and that while cohabiting the parties had a reputation in the community as being married, a rebuttable presumption arises that a common-law marriage was created. *Jeanes v. Jeanes,* 255 S.C. 161, 166–67, 177 S.E.2d 537, 539–40 (1970). This presumption may be overcome by "strong, cogent" evidence that the parties in fact never agreed to marry. *Jeanes,* 255 S.C. at 167, 177 S.E.2d at 540.

When, however, there is an impediment to marriage, such as one party's existing marriage to a third person, no common-law marriage may be formed, regardless whether mutual assent is present. Further, after the impediment is removed, the relationship is not automatically transformed into a common-law marriage. Instead, it is presumed that relationship remains non-marital. For the relationship to become marital, "there must be a new mutual agreement either by way of civil ceremony or by way of recognition of the illicit relation and a new agreement to enter into a common law marriage." *Kirby,* 270 S.C. at 141, 241 S.E.2d at 416 (citing *Byers v. Mount Vernon Mills, Inc.,* 268 S.C. 68, 231

S.E.2d 699 (1977)); *see also Johns v. Johns,* 309 S.C. 199, 201–03, 420 S.E.2d 856, 858–59 (Ct.App.1992) (involving the impediment of one party's marriage to a third person); *Bochette v. Bochette,* 300 S.C. 109, 111–12, 386 S.E.2d 475, 476–77 (Ct. App.1989) (same); *Prevatte v. Prevatte,* 297 S.C. 345, 348–49, 377 S.E.2d 114, 116–17 (Ct.App.1989) (same);[1] *Yarbrough v. Yarbrough,* 280 S.C. 546, 551–52, 314 S.E.2d 16, 18–19 (Ct. App.1984) (same).

 Even assuming, as Page urges, that the parties lived together in Florida, New York, Massachusetts, and Ireland, and further assuming that they moved together from Florida to South Carolina in August 2000,[2] no common-law marriage could have been formed, if at all, until after the move. Since none of those other jurisdictions sanctions common-law marriages, there was an impediment to marriage until the parties took residency here. It must be presumed that Sean and Page's relationship remained non-marital after the move, after the impediment disappeared. *See Kirby,* 270 S.C. at 141, 241 S.E.2d at 416. Consequently, Page has the burden of proving that the parties entered into a marital agreement after moving to South Carolina. *See Kirby,* 270 S.C. at 141, 241 S.E.2d at 416.

The family court did not place this burden on Page, however, because the court failed to recognize the impediment to marriage. Instead, the family court considered Page and Sean's relationship in its entirety, relying heavily on the parties' conduct prior to coming to South Carolina. This constitutes reversible error.

---

1. In *Prevatte,* the Court of Appeals raised the split of authority "as to whether the parties must have knowledge that the impediment has been removed." 297 S.C. at 349, 377 S.E.2d at 117 (citations omitted). The court decided that it need not resolve the issue because the parties there were aware of the impediment and its removal. *Id.* The issue becomes important in cases in which the parties are aware of the impediment but not its removal. The determination that must be made there is whether the parties truly intended to enter into a valid marriage. We need not resolve the issue here, because Page admits that she was never aware of the impediment in the first place.

2. As explained above, we do not comment on the sufficiency of the evidence to support the family court's findings of fact.

In addition, the family court misapprehended the meaning of intent to marry. The family court's order includes the following passage:

Analysis of the intent to be married is a separate consideration from the actual understanding from the parties regarding a legally binding marital relationship. Otherwise, we would not have the rich history of South Carolina common law marriage law. I find the Callens' intent to be as a married couple clear, *even though they may not have understood the legal consequences of their intentions and actions.*

(emphasis added).

The family court cited no authority for this proposition, and the proposition is irreconcilable with precedent.

■■■■■■ A party need not understand every nuance of marriage or divorce law, but he must at least know that his actions will render him married as that word is commonly understood. If a party does not comprehend that his "intentions and actions" will bind him in a "legally binding marital relationship," then he lacks intent to be married. A lack of intent to be married overrides the presumption of marriage that arises from cohabitation and reputation. South Carolina does not impose marriage upon a couple merely because they intend to be together forever. *See Jennings v. Hurt,* 160 A.D.2d 576, 554 N.Y.S.2d 220, 220 (1990) (applying South Carolina law and noting that "[o]ne cannot be married unwittingly or accidentally") (quotation omitted). Like the failure to recognize the impediment to marriage, the family court's definition of "intent to marry" constitutes reversible error.

## II. ADMISSION OF TESTIMONY

■■■■■ The family court also committed reversible error in admitting the testimony of three witnesses. At the hearing, Sean objected to the admission of the testimony of these witnesses on the ground that each came as a surprise. Sean argued that none of the witnesses' names had been timely disclosed in answers to interrogatories and that he therefore had insufficient time to depose any of them. Page had no explanation for the failure to reveal these witnesses sooner. Nevertheless, the family court overruled Sean's objection.

The court ruled that because there existed no pre-trial order which provided a specific date by which the parties had to disclose witnesses, the court had no discretion and had to admit the testimony. This was error.

A "trial court is under a duty, when the situation arises, to delay the trial for the purpose of ascertaining the type of witness involved and the content of his evidence, the nature of the failure or neglect or refusal to furnish the witness' name, and the degree of surprise to the other party, including prior knowledge of the name by said party." *Laney v. Hefley*, 262 S.C. 54, 59–60, 202 S.E.2d 12, 14 (1974) (quoting with approval *Wright v. Royse*, 43 Ill.App.2d 267, 193 N.E.2d 340 (1963)). The trial court is under such a duty regardless whether the proponent of the testimony is allegedly in violation of a pre-trial order or a court rule. *Jumper v. Hawkins*, 348 S.C. 142, 150, 558 S.E.2d 911, 915–16 (Ct.App.2001). After inquiring, the court has discretion whether to admit or exclude the testimony.

Here, there was no pre-trial order, but Page allegedly violated Rules 26(e) and 33(b) of the South Carolina Rules of Civil Procedure[3] by failing to supplement her answers to interrogatories in a timely fashion. After Sean objected to the admission of the testimonies at issue, the family court's duty to inquire arose. The family court failed to make the inquiry required under *Laney* and *Jumper* and therefore failed to exercise its discretion. "When the trial judge is vested with discretion, but his ruling reveals no discretion was, in fact, exercised, an error of law has occurred." *Fontaine v. Peitz*, 291 S.C. 536, 538, 354 S.E.2d 565, 566 (1987); *see also In re Robert M.*, 294 S.C. 69, 70–71, 362 S.E.2d 639, 640–41 (1987); *State v. Smith*, 276 S.C. 494, 498, 280 S.E.2d 200, 202 (1981). Sean was prejudiced by the family court's ruling, requiring reversal and a new hearing. We do not mean to imply that the family court is precluded from admitting the same testimony at the new hearing. We hold only that the court's failure to exercise discretion below requires the new hearing.

---

3. Rules 26(e) and 33(b), SCRCP.

### III. ATTORNEY FEES

As stated above, the family court ordered Sean to pay Page's attorney fees, $113,405.98. One basis for the award was the beneficial result achieved by Page's attorneys. Because we reverse the finding of a common-law marriage, we also reverse the award of attorney fees.

## CONCLUSION

The family court failed to apply the proper standard for determining whether Sean and Page entered into a common-law marriage. The court also committed reversible error in admitting the testimonies of allegedly surprise witnesses without first making the required inquiry and exercising discretion. Consequently, the family court's finding a common-law marriage and awarding attorney fees to Page are reversed and the case is remanded for a new hearing.

**REVERSED AND REMANDED.**

MOORE, WALLER and BURNETT, JJ., concur. TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL.

I respectfully dissent. In my view, Sean and Page entered into a common-law marriage. Therefore, I would affirm the family court's decision.

In my view, the majority misconstrues the law to the extent that the majority views the fact that the couple lived outside of South Carolina as an impediment to marriage. The prohibition of common-law marriage in other jurisdictions does not prevent a South Carolina court from recognizing the marriage when the couple moves to this state. In my opinion, a marriage that may be invalid in the state where the parties contracted the marriage, would be valid in South Carolina if the marriage otherwise comports with our state's marriage laws. *See Estate of Murnion,* 212 Mont. 107, 686 P.2d 893, 899 (1984) (holding that a marriage that may be invalid where contracted will be recognized under Montana law if the marriage does not conflict with Montana law).

Further, the majority ignores the proper standard of review in this case. The issue whether a couple is common-law married is a question of law. *Tarnowski v. Lieberman*, 348 S.C. 616, 619, 560 S.E.2d 438, 440 (Ct.App.2002). Therefore, our review in this case is limited to a determination of whether there is any evidence to support the trial judge's findings. *Id.* The question is not what conclusion this Court would have reached after reviewing the facts, but whether the facts as found by the family court are supported by the evidence. *Id.*

In the present case, the family court found that a common-law marriage existed. The family court relied on evidence that the couple had cohabited for several years over the course of the relationship, most recently in South Carolina. The family court also found that the couple held themselves out to the community as husband and wife. In fact, Sean knew that Page used the name Callen for many years, he did not object.

Therefore in my opinion, there is evidence in the record supporting the family court's findings. Accordingly, I would uphold the family court's ruling finding that a common-law marriage existed.