THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Wilma Brea
 Stiggers-Smith, Respondent,
 v.
 Arthur L.
 Smith, Appellant.
 
 
 

Appeal From Anderson County
  Billy A. Tunstall, Jr., Family Court
Judge

Unpublished Opinion No. 2009-UP-105
 Heard January 6, 2009  Filed March 2,
2009    

AFFIRMED

 
 
 
 David Alan Wilson and Thomas T. Hodges, both of Greenville, for
 Appellant.
 Andrew G. Goodson, of Fountain Inn, Linda C. Hayes, of Greenville,
 for Respondent.
 
 
 

PER
 CURIAM:  Dr. Arthur Smith
 (Dr. Smith) appeals the family court's finding that he and Wilma Brea Stiggers-Smith
 (Mrs. Stiggers-Smith) entered into a common-law marriage.  Dr. Smith also
 appeals the admission of an affidavit into evidence and the family court's
 failure to address his request for reimbursement of fees paid to Mrs.
 Stiggers-Smith and for attorney fees.  We affirm.  
FACTS/PROCEDURAL HISTORY
Mrs.
 Stiggers-Smith and Dr. Smith indicated they began a romantic relationship
 sometime around 1989 in Texas.  The couple moved to approximately three other
 states together before eventually moving to South Carolina in February 1999. 
 The couple never participated in a civil marriage ceremony.  In 2006, the
 couple separated.    
After
 moving to South Carolina, Dr. Smith and Mrs. Stiggers-Smith purchased a home
 together.  In this home, the couple shared a bedroom and a traditional marital
 relationship.  The couple also purchased a vehicle together in South
 Carolina.   
During
 their relationship in South Carolina, Mrs. Stiggers-Smith began using Dr. Smith's
 last name as her own.  Mrs. Stiggers-Smith signed contracts for the purchase of
 their home and their vehicle with the last name of Smith.  Mrs. Stiggers-Smith
 also received substantial amounts of mail at the couple's house addressed to
 either "Brea Stiggers-Smith" or "Brea Smith." 
 Additionally, Mrs. Stiggers-Smith's business cards read "Brea
 Stiggers-Smith," and she used the name "Brea Smith" on school
 projects.  Further, when Dr. Smith's sister passed away in 2006, Mrs.
 Stiggers-Smith was listed in the program as a sister-in-law.  
Mrs.
 Stiggers-Smith, however, stated on her South Carolina income tax returns that
 she was single, as did Dr. Smith.  She also stated she was single when filling
 out a W-4 form for her employer.  Moreover, Mrs. Stiggers-Smith also used the
 name "Wilma Stiggers" on her South Carolina voter registration card.[1]    
Following the
 couple's separation, Mrs. Stiggers-Smith filed a complaint requesting the
 determination of a common-law marriage, alimony, division of assets and debts,
 attorney fees, and other related relief.  A temporary hearing was held, which
 resulted in the family court ordering Dr. Smith to continue paying Mrs.
 Stiggers-Smith's rent and car payment.  Dr. Smith was also ordered to pay Mrs.
 Stiggers-Smith's attorney $1,500.  The temporary order, however, allowed for
 Dr. Smith to seek reimbursement if a common-law marriage was not found to
 exist.  
After
 a final hearing, the family court found Mrs. Stiggers-Smith and Dr. Smith
 entered into a common-law marriage in South Carolina.  Mrs. Stiggers-Smith was,
 therefore, allowed to proceed with her divorce action.  Dr. Smith was ordered
 to pay Mrs. Stiggers-Smith's attorney fees and costs.  Dr. Smith filed a motion
 to reconsider, which the family court denied.  This appeal followed.  
STANDARD OF REVIEW
"Whether a common-law marriage exists is a
 question of law."  Callen v. Callen, 365 S.C. 618, 623, 620 S.E.2d
 59, 62 (2005).  The party alleging the existence of the marriage carries the
 burden of proving the elements by a preponderance of the evidence.  Id. 
 This Court's review is limited to determining whether or not there is any
 evidence to support the findings of the family court.  Tarnowski v.
 Lieberman, 348 S.C. 616, 619, 560 S.E.2d 438, 440 (Ct. App. 2002).  "Because
 this action sounds in law, and the existence of a common[-]law marriage is a
 question of fact, this [C]ourt is bound by the [family] court's factual
 findings, and its credibility determinations."  Id.  This Court may
 not act as the fact-finder but must instead affirm the family court's findings
 if there is any evidence in the record to support those findings.[2]  Id.    
LAW/ANALYSIS
Dr. Smith argues
 the family court erred in finding he and Mrs. Stiggers-Smith entered into a
 common-law marriage.  We disagree.
In South Carolina,
 a valid common-law marriage requires "a mutual agreement between the
 parties to assume toward each other the relation of husband and wife."  Johnson
 v. Johnson, 235 S.C. 542, 550, 112 S.E.2d 647, 651 (1960).  As with any
 marriage, a contract to be married must be entered between the husband and
 wife, but with a common-law marriage, no express contract is required.  Callen,
 365 S.C. at 624, 620 S.E.2d at 62.  Instead, "the agreement may be
 inferred from the circumstances."  Id.  
Due
 to the lack of direct evidence demonstrating the requisite intent of the
 parties to be married, circumstantial evidence is often used to prove the
 existence of a common-law marriage.  Barker v. Baker, 330 S.C. 361,
 367-68, 499 S.E.2d 503, 507 (Ct. App. 1998).  "The circumstantial evidence
 typically relied upon to establish a common-law marriage includes evidence
 establishing that the parties have lived together for an extended period of
 time and have publicly held themselves out as husband and wife."  Id. at 368, 499 S.E.2d at 507; see Owens v. Owens, 320 S.C. 543, 545-46,
 466 S.E.2d 373, 374-75 (Ct. App. 1996) (finding the evidence demonstrated the existence
 of a common-law marriage when (1) the parties lived together, (2) the wife
 began using the husband's last name as her own, (3) the parties formed numerous
 contracts as husband and wife, and (4) the wife made numerous purchases of
 products and services using the husband's last name).       
When
 a party presents evidence of "'apparently matrimonial' cohabitation"
 and a reputation in the community as being a married couple, a rebuttable
 presumption arises that the parties entered into a common-law marriage.  Callen,
 365 S.C. at 624, 620 S.E.2d at 62.  "Strong, cogent" evidence that
 the parties never agreed to marry is needed to overcome this presumption.  Id. 
 Additionally, "[a] party need not understand every nuance of marriage or
 divorce law, but he [or she] must at least know that his [or her] actions will
 render him [or her] married as that word is commonly understood."  Id. at 626, 620 S.E.2d at 63.     
If
 there is an impediment to marriage, no common-law marriage may be formed.  Id. at 62, 620 S.E.2d at 624.  "A relationship illicit at its inception does
 not ripen into a common[-]law marriage once the impediment to marriage is
 removed[,]" but instead the law presumes the relationship retains its
 illicit character.  Yarbrough v. Yarbrough, 280 S.C. 546, 551, 314
 S.E.2d 16, 19 (Ct. App. 1984).  Evidence of an agreement to enter into a
 common-law marriage after the removal of the impediment is required to
 demonstrate a common-law marriage arose, but the agreement may be revealed by
 the conduct of the parties.  Id.  This agreement must, however, be
 proven by a preponderance of the evidence.  Kirby v. Kirby, 270 S.C.
 137, 141, 241 S.E.2d 415, 416 (1978).         
In
 the present case, Dr. Smith and Mrs. Stiggers-Smith began their relationship in
 Texas around 1989 and thereafter moved through approximately three states[3] together before settling in South Carolina in February 1999.  At trial, the
 parties stipulated no common-law marriage existed before their move to South
 Carolina.  Therefore, for a common-law marriage to exist, Dr. Smith and Mrs.
 Stiggers-Smith must have had a mutual agreement to assume the relationship of
 husband and wife while living in South Carolina.  See Callen, 365
 S.C. at 625, 620 S.E.2d at 63 (stating the proponent of the alleged marriage
 has the burden of proving the parties entered into a marital agreement after
 moving from states that do not recognize common-law marriages to South
 Carolina).  The family court found Mrs. Stiggers-Smith carried her burden of
 demonstrating the couple entered such an agreement while living in South
 Carolina.  
The
 family court's order stated "the [common-law] marriage came into existence
 when [Dr. Smith and Mrs. Stiggers-Smith] moved into South Carolina in February
 of 1999."  The order then proceeded with a thorough analysis of the couple's
 behavior once living in South Carolina, and from this behavior the family court
 determined both parties intended to be married and held themselves out to the
 community as a married couple.  When reading the order as a whole, it is clear
 the family court did not find the couple's relationship converted into a
 common-law marriage when they moved to South Carolina; rather, the family court
 found Dr. Smith's and Mrs. Stiggers-Smith's actions after their move to South
 Carolina demonstrated their intent to enter into a common-law marriage while
 living in South Carolina.  Pursuant to our standard of review, this Court must
 only determine whether any evidence supports the family court's finding, and we
 find there is evidence in the record to support this finding.  See id. at 629, 620 S.E.2d at 64-65 (Toal, C.J., dissenting) (stating the issue of
 whether a couple is common-law married is a question of law, and therefore, the
 appellate courts only determine whether the evidence supports the facts found
 by the family court).     
While
 living in South Carolina, Dr. Smith and Mrs. Stiggers-Smith lived together in
 what appeared to be a matrimonial manner.  The couple shared a bedroom and
 everything else that a married couple shares in a marital relationship.  This
 cohabitation continued until 2006 when Dr. Smith asked Mrs. Stiggers-Smith to
 move out of their home.  
Upon
 moving to South Carolina, Dr. Smith and Mrs. Stiggers-Smith also appeared to
 hold themselves out to the community as a married couple.  Mrs. Stiggers-Smith
 testified she began using Dr. Smith's last name once they moved to South
 Carolina.  Mrs. Stiggers-Smith used this last name on contracts, school
 materials, and business cards.  She also received substantial amounts of mail
 at the couple's home, including letters, bills, magazines, and catalogs,
 addressed to either "Brea Stiggers-Smith" or "Brea Smith." 
 Dr. Smith and Mrs. Stiggers-Smith also received mail at their home as a couple,
 including Christmas cards in 2002 from one of Dr. Smith's office employees and
 one of his business associates.  These cards were addressed to "Mr. and
 Mrs. Arthur Smith" and "Arthur and Brea Smith," respectively. 
 There was no testimony presented indicating Dr. Smith ever objected to Mrs. Stiggers-Smith's
 use of his last name.    
Shortly
 after their move to South Carolina, Mrs. Stiggers-Smith assumed the task of
 finding a house for the couple.  After finding one, Dr. Smith and Mrs.
 Stiggers-Smith met with a realtor to sign a purchase agreement.  The parties
 were each listed under "Purchaser" and signed their names as "Arthur
 L. Smith, M.D." and "W. Brea Smith."  The parties additionally
 signed multiple addendums to the purchase agreement and again used the names "Arthur
 L. Smith, M.D." and "W. Brea Smith."    
Additionally,
 Dr. Smith and Mrs. Stiggers-Smith purchased a vehicle together in South
 Carolina.  Again, each party was listed as a purchaser of the vehicle, and they
 signed their names as "Arthur L. Smith, M.D." and "Wilma B.
 Stiggers Smith."  The car salesman from this purchase testified the couple
 held themselves out to him as being married and stated Dr. Smith never objected
 to the paperwork listing Mrs. Stiggers-Smith as "Wilma S. Smith."     
Mrs.
 Stiggers-Smith's close friend, Marilyn Davis (Davis), also testified she was
 under the impression Dr. Smith and Mrs. Stiggers-Smith were husband and wife. 
 Davis testified she often called the couple's home and when speaking to Dr.
 Smith she would ask if she could "speak to [his] lovely or beautiful wife." 
 Davis stated Dr. Smith "never once disputed that [Mrs. Stiggers-Smith]
 wasn't his wife or [she] never would have addressed [Mrs. Stiggers-Smith] in
 such a way."  Davis, who was also a patient of Dr. Smith, additionally
 recalled that during appointments with Dr. Smith she would make conversation by
 "ask[ing] him how his wife was doing."  Davis again acknowledged Dr.
 Smith never once corrected her by explaining he and Mrs. Stiggers-Smith were
 not married.       
Furthermore,
 Mrs. Stiggers-Smith testified that even though she felt like she and Dr. Smith
 had been married since their relationship began in Texas, she understood her
 actions of using Dr. Smith's last name and signing various deeds and contracts
 with Dr. Smith would render her married once living in South Carolina.  To the
 contrary, Dr. Smith testified he was not aware Mrs. Stiggers-Smith used his
 last name until he received a copy of the complaint and therefore had no
 opportunity to object to her use of his last name.  Dr. Smith stated he failed
 to notice Mrs. Stiggers-Smith's signature on the agreement to purchase the car,
 an insurance agreement, the retail installment contract, or the real estate
 contract and its addendums.  He also testified he never noticed the name "Smith"
 appearing on letters, bills, magazines, and catalogs Mrs. Stiggers-Smith
 received at the couple's home.   
The
 family court found the exhibits and witnesses presented by Mrs. Stiggers-Smith
 overwhelmingly supported a finding that the parties entered into a common-law
 marriage.  The family court additionally found Dr. Smith's testimony
 unconvincing, and as the appellate court, we are bound by this credibility
 determination.  See Tarnowski, 348 S.C. at 619, 560 S.E.2d at 440
 ("Because [the issue of common-law marriage] sounds in law, and the
 existence of a common[-]law marriage is a question of fact, this [C]ourt is
 bound by the [family] court's factual findings, and its credibility
 determinations.").   
Based
 on the foregoing, we find there is evidence to support the family court's
 finding of a common-law marriage between Dr. Smith and Mrs. Stiggers-Smith. 
 While we acknowledge the existence of conflicting evidence regarding the couple's
 marital status, we are bound by our standard of review and, therefore, affirm
 the family court's determination.   
Dr.
 Smith next argues the family court committed reversible error by admitting an
 affidavit from an unknown, non-testifying person into evidence.  We
 disagree.      
In
 July 2002, Mrs. Stiggers-Smith transferred her interest in the couple's house
 to Dr. Smith.  Attached to this deed was an affidavit prepared by an unknown
 individual who did not testify at trial.  This affidavit stated no
 consideration was needed in the deed transfer between "Brea Smith a/k/a
 Wilma Brea Stiggers" and "Arthur L. Smith" because it was a
 transfer "between husband and wife."  Mrs. Stiggers-Smith introduced
 this affidavit at trial to show the public's perception of Mrs. Stiggers-Smith
 and Dr. Smith as a married couple.  Dr. Smith objected arguing hearsay, but the
 family court overruled the objection.    
Whether
 or not this evidence was hearsay, "the improper admission of hearsay is
 reversible error only when the admission causes prejudice."  Small v.
 Pioneer Machinery, Inc., 329 S.C. 448, 470, 494 S.E.2d 835, 846 (Ct. App.
 1997).  "Where the hearsay is merely cumulative to other evidence, its
 admission is harmless."  Id.  
The
 record contains evidence other than the affidavit which demonstrated Dr. Smith
 and Mrs. Stiggers-Smith held themselves out to the community as a married
 couple.  The affidavit was merely cumulative to that evidence.  Thus, if an
 error occurred in its admission, the error was not prejudicial, and the family
 court did not commit reversible error by admitting the affidavit into evidence.  See id. (finding no prejudice when a statement that was possibly
 hearsay was admitted into evidence because the statement was cumulative to
 other evidence in the record).    
Finally,
 Dr. Smith argues the family court erred in failing to address his counterclaims
 for reimbursements, attorney fees, and costs.  We find this argument abandoned
 on appeal.    
 An
 issue is deemed abandoned and will not be considered on appeal if the argument
 is raised in a brief but not supported by authority. Mulherin-Howell v. Cobb,
 362 S.C. 588, 600, 608 S.E.2d 587, 593-94 (Ct. App. 2005).  Dr. Smith failed to
 cite any authority in support of his position, and therefore, we will not
 address the argument.  
CONCLUSION
Based
 on the foregoing, the family court's order is 
AFFIRMED.
WILLIAMS,
PIEPER, and GEATHERS, JJ., concur.    

[1] Mrs. Stiggers-Smith stated the reason she put
 "single" on these documents was due to her belief she needed an
 actual marriage license or piece of paper stating she was married in order to
 avoid problems.  
[2] During oral argument, both parties asserted this
 Court had the authority to find facts in accordance with its own view of the
 preponderance of the evidence; however, we find the standard of review stated
 in Callen, 365 S.C. at 623, 620 S.E.2d at 62, and its preceding
 authority to be controlling precedent upon this Court.     
[3] Dr. Smith and Mrs. Stiggers-Smith moved from Texas to
 Missouri to Louisiana and then to Ohio before settling in South Carolina. 
 Apart from Texas, none of the states the couple resided in prior to South
 Carolina recognize common-law marriages.