LOCKEMY, C.J.:
**20 In this action Charles Gary asserts the circuit court erred by determining he was not Blondell Gary's husband at the time of her death and not an heir to her estate. Charles asserts the estate should be estopped from taking a position contradictory to its pleadings in previous cases. We affirm.
FACTS
Though the record is not clear as to dates, it is clear Charles and Blondell were married and that marriage produced two children. Subsequently, Charles married Doretha Chisolm on July 31, 1982. Charles and Doretha finalized their divorce on January 21, 2001. Prior to finalizing their divorce, Charles remarried Blondell on November 30, 1999, and they lived together as husband and wife until Blondell's death.
On February 16, 2012, Blondell and Charles were traveling in an ambulance operated by Lowcountry Medical Transport when the driver "recklessly and negligently lost control of the vehicle, left the roadway, and *293 collided with a tree." Blondell died as a result of her injuries.
Subsequently, Angel Gary, the natural daughter of Charles and Blondell, filed a petition to be appointed the personal representative of her mother's estate. The application requested the "[n]ames and addresses of intestate heirs who are not devisees." Angel indicated Charles Gary was Blondell's spouse and that Blondell had two daughters and two sons. The probate court appointed Angel as the personal representative of her mother's estate.
On November 8, 2012, Angel filed suit on her mother's behalf against Lowcountry Medical Transport. Angel alleged a single cause of action for negligence and requested actual and punitive damages. In her complaint, Angel alleged, "Blondell Gary (hereinafter Blondell), on behalf of her husband, Charles Gary, contracted with [Lowcountry Medical Transport] to **21 provide non-emergency medical transport on the day in question."
The parties entered into a settlement agreement on September 14, 2015, wherein Angel agreed to dismiss the estate's lawsuit against Lowcountry Medical in exchange for $2,250,000.
On December 14, 2015, Angel Gary filed a petition to determine heirship of her mother's estate. Angel asserted, "Since the time of her initial appointment as Personal Representative, [she] has become aware of certain facts that call into question whether Charles Gary was married to [Blondell]." Specifically, Angel asserted, "(1) Charles Gary was married to another woman when he unlawfully attempted to marry Blondell Gary, (2) Blondell Gary did not possess the requisite intent to marry Charles Gary, (3) no marriage ceremony ever took place, and (4) that any alleged marriage is void." Angel asserted Charles married Doretha Chisolm on July 31, 1982, and the couple divorced between December 13, 2000, and January 22, 2001. Charles and Blondell's marriage certificate stated the couple was married on November 30, 1999. Accordingly, Angel alleged any marriage was void and Charles was therefore not an heir to Blondell's estate.
Charles denied he was already married when he married Blondell.[1] He also alleged "[t]he Estate is judicially bound by the admissions in its pleadings that Mr. Gary is the **22 surviving spouse and a beneficiary of the Estate of Blondell M. Gary." Charles also asserted "[t]he Estate's challenge to Mr. Gary['s] status as a beneficiary is barred[ ] because Judge Buckner's November 13, 2015, Consent Order of Dismissal with Prejudice [of the wrongful death suit] acts as an adjudication on the merits and therefore precludes subsequent litigation just as if the action had been tried to a final adjudication."
The circuit court held a hearing on the estate's motion on January 13, 2016. The circuit court found it was "clear that Charles Gary was still married to Doretha Chisolm Gary when he purportedly married Blondell Gary." Accordingly, the circuit court found "the purported marriage to Blondell Gary was void from its inception." The circuit court noted Charles did not offer any evidence of a common law marriage to Blondell, "other than the fact that the Estate originally thought he was [Blondell's spouse]." Accordingly, the circuit court declared Charles was not an heir of Blondell's estate. This appeal followed.
LAW
This court has noted "parties are judicially bound by their pleadings unless withdrawn, *294 altered or stricken by amendment or otherwise." Postal v. Mann , 308 S.C. 385, 387, 418 S.E.2d 322, 323 (Ct. App. 1992).
The allegations, statements or admissions contained in a pleading are conclusive as against the pleader and a party cannot subsequently take a position contradictory of, or inconsistent with, his pleadings and the facts which are admitted by the pleadings are taken as true against the pleader for the purpose of the action.
Id ."Notwithstanding allegations to the contrary in his or her pleadings, a party is not precluded from showing the facts to be as they really are where his or her allegations are due to an honest mistake or ignorance as to the facts." 71 C.J.S. Pleadings § 89 (2011).
ANALYSIS
Charles asserts the Estate is judicially bound by its pleadings in the wrongful death action, and cannot take a position contrary to those pleadings to deny his status as an heir to the Estate. We disagree.
**23 This court encountered a similar issue in Johns v. Johns . 309 S.C. 199, 420 S.E.2d 856 (Ct. App. 1992). Antoinette Johns, the alleged common law wife of James Johns, sued her purported husband for divorce, custody of the parties' child, an increase in child support, alimony, and attorney's fees. Id . at 200-01, 420 S.E.2d at 857. The family court found there was no common law marriage and denied her requested relief because James was married to another woman "[a]t the time the parties began residing together ... and throughout their cohabitation." Id . at 201, 420 S.E.2d at 858.
On appeal, Antoinette argued the issue of common law marriage was established by the doctrine of res judicata. Id . at 202, 420 S.E.2d at 858. Prior to filing the divorce action, Antoinette and James entered into a consent order "in which the court found they were married at common law and ordered that they were 'legally separated.' " Id . at 201, 420 S.E.2d at 858. Antoinette asserted the consent order precluded the family court's subsequent finding that they were never married. Id . at 202, 420 S.E.2d at 858.
The court of appeals affirmed the family court's order finding, "[t]he common law marriage was 'void' as a matter of public policy." Id . (quoting S.C. Code Ann. § 20-1-80 ("All marriages contracted while either of the parties has a former wife or husband living shall be void.") ). This court also found the public policy underlying res judicata must yield to the competing public policy expressed by the General Assembly that bigamous marriages are void. Id . at 203, 420 S.E.2d at 859. The court therefore determined, "[a]lthough the parties' consent order is not void, the marriage it affirms is .... In balancing the relevant public policies ... the consent order should not be given res judicata effect." Id .
We find the same public policy concerns expressed by this court in Johns drive our decision in this case. On one side, we have a marriage which contravened public policy as expressed by the General Assembly. See § 20-1-80 (2014). On the other, the doctrine of binding a party to its pleadings exists to protect the integrity of the court process. See, e.g., Hayne Fed. Credit Union , 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997) (noting the purpose behind the related doctrine of judicial estoppel is to "protect the integrity of the judicial **24 process or the integrity of courts rather than to protect litigants from allegedly improper or deceitful conduct by their adversaries"). While ordinarily the Estate may be bound to its previous assertions, we find that policy should yield to the overriding policy against bigamous marriages, as expressed by the General Assembly. See Johns , 309 S.C. at 203, 420 S.E.2d at 859 ("[T]he courts must weigh the competing public policies."); id . (finding the public policy of not recognizing bigamous marriages outweighs the public policy favoring finality of judgments).
CONCLUSION
Accordingly the trial court's order is
AFFIRMED.
HUFF and HILL, JJ., concur.

Charles does not argue on appeal any factual basis to prove he was Blondell's common law spouse. In South Carolina, when "there is an impediment to marriage, such as one party's existing marriage to a third person, no common law marriage may be formed, regardless whether mutual assent is present." Callen v. Callen , 365 S.C. 618, 624, 620 S.E.2d 59, 62 (2005). "Further, after the impediment is removed, the relationship is not automatically transformed into a common law marriage. Instead, it is presumed that the relationship remains non-marital." Id ."For the relationship to become marital, 'there must be a new mutual agreement either by way of civil ceremony or by way of recognition of the illicit relation and a new agreement to enter into a common law marriage.' " Id . (quoting Kirby v. Kirby , 270 S.C. 137, 141, 241 S.E.2d 415, 416 (1978) ). No evidence was presented of a subsequent agreement that Charles and Blondell entered into a common law marriage after Charles's divorce was finalized. Therefore, the only issue to be determined in this appeal is whether the Estate's assertions in the prior cases bind the Estate to its assertion that Charles was Blondell's husband.