## THE STATE OF SOUTH CAROLINA
## In The Supreme Court

A. Marion Stone, III, Respondent,

v.

Susan B. Thompson, Petitioner.

Appellate Case No. 2017-000227

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
Jocelyn B. Cate, Family Court Judge

---

Opinion No. 27876
Heard October 16, 2018 – Filed April 3, 2019

---

## REVERSED

---

Donald Bruce Clark, of Donald B. Clark, LLC, of
Charleston, for Petitioner.

Alexander Blair Cash and Daniel Francis Blanchard, III,
both of Rosen Rosen & Hagood, LLC, of Charleston, for
Respondent.

---

**JUSTICE HEARN:** We granted certiorari to determine whether a family court
order finding a common-law marriage was immediately appealable under our
general appealability statute, S.C. Code Ann. § 14-3-330. The family court
bifurcated the proceedings to first determine whether the parties were married, and

has yet to try the remaining issues. The court of appeals held the order was interlocutory because it did not end the case, and further, that it was not immediately appealable under the statute. *Stone v. Thompson*, 418 S.C. 599, 795 S.E.2d 49 (Ct. App. 2016). Because the order involved the merits of the causes of action, we reverse.

## FACTUAL BACKGROUND

Stone and Thompson met in 1983 and began a romantic relationship shortly thereafter. Thompson was married to another man at the time and obtained a divorce from him in 1987. Later that year, Stone and Thompson had their first child. After Hurricane Hugo hit Charleston in 1989, the parties had their second child and started living together. They continued to live, raise their children, and manage rental properties together for approximately 20 years, but ultimately ended their relationship after Thompson discovered Stone was having an affair with a woman in Costa Rica.

In 2012, Stone filed an amended complaint in family court alleging, *inter alia*, he was entitled to a declaratory judgment that the parties were common-law married, a divorce, and an equitable distribution of alleged marital property.[1] Thompson answered, contending the parties were not common-law married, asserting several counterclaims, and seeking dismissal of the case. Thompson also asked the court, if it would not dismiss the case, to bifurcate the issues to first determine whether the parties were common-law married. After a hearing, the family court denied Thompson's motion to dismiss but granted her motion to bifurcate, ordering a trial on the sole issue of whether a common-law marriage existed between the parties. The court reasoned that, should it determine no marriage existed, it would not need to address the other issues in the case.

The family court held a 7-day trial that featured 29 witnesses, 12 videotaped depositions, and nearly 200 exhibits. The court determined the parties had expressed the intent and held themselves out to be married beginning in 1989, and accordingly, the parties had been married since that time. The family court's judgment stated it

---

[1] Stone also later filed a complaint in circuit court—based on largely the same set of facts—seeking relief for breach of contract and fiduciary duty, quantum meruit, and other temporary and permanent relief. The case was stayed pending resolution of the family court proceedings.

was a "Final Order," but also that it did not end the case, as the divorce and equitable distribution actions were still pending.

Thompson appealed, and Stone argued the order was interlocutory and not immediately appealable under section 14-3-330. The court of appeals agreed with Stone. The court determined the order was interlocutory because, although the family court ruled that a common-law marriage existed and captioned the order "Final," it expressly noted the order did not end the case due to the still-pending divorce and equitable distribution causes of action. The court concluded the order did not involve the merits because the family court exercised its discretion to bifurcate the case and adjudicated the preliminary issue of marriage before proceeding to the remaining issues. Moreover, the court determined the order did not affect Thompson's substantial rights because it did not deprive her of a mode of trial, and she would be able to challenge any error in the future. Consequently, the court dismissed Thompson's appeal.

## DISCUSSION

Section 14-3-330 of the South Carolina Code provides this Court jurisdiction to review, in relevant part:

> (1) Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the court of common pleas and general sessions, brought there by original process or removed there from any inferior court or jurisdiction, and final judgments in such actions; provided, that if no appeal be taken until final judgment is entered the court may upon appeal from such final judgment review any intermediate order or decree necessarily affecting the judgment not before appealed from.S.C. Code Ann. § 14-3-330(1) (1976).[2] An order involves the merits under § 14-3-330(1) when it finally determines some substantial matter forming the whole or part of a cause of action or defense. *Mid-State Distribs, Inc. v. Century Importers, Inc.*, 310 S.C. 330, 334, 426 S.E.2d 777, 780 (1993).

---

[2] *See* S.C. Code Ann. § 63-3-630(A) (2010); *see also Ex parte Capital U-Drive-It, Inc.*, 369 S.C. 1, 6, 630 S.E.2d 464, 467 (2006) (applying section 14-3-330 to determine the appealability of a family court order).

The provisions of section 14-3-330 are narrowly construed and serve the underlying policy favoring judicial economy by avoiding "piecemeal appeals." *Hagood v. Sommerville*, 362 S.C. 191, 196, 607 S.E.2d 707, 709 (2005). However, by its nature, the question of whether an order is immediately appealable is determined on a case-by-case basis. *Morrow v. Fundamental Long-Term Care Holdings, LLC*, 412 S.C. 534, 537–38, 773 S.E.2d 144, 146 (2015).

Thompson argues the order was appealable under section 14-3-330(1) because it finally determined a substantial matter forming part of the cause of action and a defense to it, and therefore, it involved the merits. In response, Stone argues the common-law marriage finding was an embedded element of his claims and a preliminary determination to allow them to go forward. We agree with Thompson.

We believe the text of subsection (1) and our jurisprudence compel the conclusion the order was appealable. Stone's actions for divorce and equitable distribution require a determination the parties are married. This determination is substantial, not only as a part of the causes of action, but also in terms of the larger effects of marriage across other areas of law. Thompson's primary—and, to this point, exclusive—defense to the family court causes of action was that the parties were not married. Accordingly, the court weighed the evidence and finally determined a substantial matter forming part of Stone's causes of action, as well as Thompson's defense, which satisfies the test we clarified in *Mid-State*. 310 S.C. at 334, 426 S.E.2d at 780.

We emphasize the particular circumstances that lead to our holding today, in keeping with our practice of narrowly construing section 14-3-330. *Hagood*, 362 S.C. at 196, 607 S.E.2d at 709. In bifurcating the issues, the family court recognized the central importance of the common-law marriage determination, without which the other causes of action could not proceed. The court conducted an extensive trial on this sole issue, and the vast majority of the evidence adduced likely will not be relevant during any future proceedings for divorce and equitable distribution. While the subsequent proceedings are separate from the common-law marriage trial (by nature of the bifurcation), the existence of a marriage clearly involves the merits of those issues.[3] Thus, our holding as to appealability would apply only where, following a bifurcated hearing, a claim or defense has been finally determined.

---

[3] We also note our decision in *Callen v. Callen*, 365 S.C. 618, 620 S.E.2d 59 (2005), in which we certified an appeal regarding common-law marriage under Rule 204(b),

We hold the family court's bifurcated common-law marriage order was appealable under section 14-3-330(1) because it involved the merits. As a result, we need not reach the parties' remaining arguments. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues after reaching a dispositive issue).

## CONCLUSION

Accordingly, the court of appeals' decision is **REVERSED**. In the interest of bringing this lengthy litigation on whether a common law marriage existed to a close, we do not remand to the court of appeals; instead, we retain jurisdiction and will proceed to set the remaining issues for oral argument.

**KITTREDGE, FEW and JAMES, JJ., concur. BEATTY, C.J., concurring in result in a separate opinion.**

---

SCACR. In *Callen*, as here, the family court bifurcated divorce and common-law marriage proceedings, and we heard an appeal only from the common-law marriage portion. While we did not hold the family court's order was appealable due to the certification, and the parties did not raise the issue of appealability, nothing in *Callen* suggested an appeal from a bifurcated order of common-law marriage was inappropriate.

**CHIEF JUSTICE BEATTY:** I concur in the result reached by the majority; however, I write separately to express my displeasure with the manner of trial of this case. In my view, bifurcation in a domestic relations case should be rare if ever at all. The emotional and contentious nature of most domestic relations cases all but guarantees an expensive, long, and tortuous path to resolution. Bifurcation only adds to the expense and delayed resolution. Moreover, bifurcation thwarts this Court's long-held policy to avoid piecemeal appeals. This case is a prime example of this problem.